CHIEF JUSTICE PETERS
delivered the opinion of the ciourt.
The appellant was indicted in the Greenup Circuit Court for grand larceny, described in the indictment as having been committed as follows: “The said John Elliott, on the day of February, 1876, in the county aforesaid, feloniously stole, took, and carried away one axe and various other articles of personal property, specifically named, with their respective *177 values attached, all being the personal property of J. C. Irvin as bailee, and of the value of more than $4 in the aggregate.” And having been tried and found guilty by the jury, and his punishment fixed at confinement in the penitentiary for one year, and his motion for a new trial having been overruled, and judgment having been rendered against him- in conformity to the verdict, he prosecutes this appeal.
On the trial James C. Irvin proved that he delivered the articles named in the indictment to the prisoner “ on a cutting wood job” let to him by Mr. Keaton, and to enable him to go to work on the job, and for no other purpose; that he disappeared after he got said articles, and the witness saw no more of him until he was in custody; that the prisoner represented to him he was getting the articles on the job and to enable him to go to work as is usual at the furnace. The ai’ticles were in his possession as bailee for the furnace, and the prisoner drew them on the job.
Jesse Keaton was then introduced as a witness, and testified that he knew the accused; that he hired him to cut a lot of' cord-wood, and advanced to him the articles mentioned in the indictment; the axe and axe-handle “ were retunxable;” there was no time set when the wood was to be cut; the agreement was made in December, 1875; that the prisoner failed to cut the wood. The goods were delivered to him in daylight. Witness directed Mr. Ii’vin to let him have them. He let the job of cuttiixg to the prisoner, and, as is usual on contracts of that character, he got the articles named, and he was to proceed immediately to his work and cut the wood with usual dispatch. After getting the articles he left, and did not do any of the work; went to the county of Carter, and witness never saw him again until after he was arrested and in custody on this charge. And that was all the evidence.
The court then instructed the jury as follows:
“No. 1. If the jury believe, from the evidence, beyond a *178 reasonable doubt, that the prisoner obtained from the possession of Irvin, as agent of the Eastern Kentucky Railroad Company, the property mentioned in the indictment, the property of said company, and that at the time he thus obtained possession of the property he then intended to steal and take the same away and convert it to his own use fraudulently, and afterward did carry it away and convert it to his own use, and that the property was of the value of $4 or more, they will find him guilty as charged in the indictment, and fix his punishment at not less than one nor more than five years’ imprisonment in the penitentiary; otherwise they will acquit.
“ No. 2. A very material fact is the intention of the prisoner at the time he received the goods; and unless the jury shall believe, from the evidence, beyond a reasonable doubt, that the prisoner at that time intended to steal the goods and convert them to his own use fraudulently, they will acquit.”
To the giving said instructions the attorney for appellant objected; but his objections were overruled, and he excepted.
And whether or not the court erred in thus instructing the jurjq is the vital question in the case.
The material ingredients to constitute the crime of larceny are that the goods must be taken animo furandi, and against the will of the owner of them; hence in a class of cases where • it appears that the goods were taken by the delivery or consent of the owner or of some one having authority to deliver them, and they are converted by the party to whom they are delivered, it is often a very difficult question to determine the nature of the offense.
In respect to such cases it is said in 2 Russell on Crimes, 21, “Where the goods are obtained by delivery, if it appear that although there is a delivery by the owner in fact, yet there is no change of property nor of legal possession, but the legal possession still remains exclusively with the owner, larceny may be committed exactly as if no such delivery had been made.”
*179 It is stated that in general, where the delivery of goods is for a certain, special, and particular purpose, the possession is still supposed to reside unparted with in the first proprietor. (Ibid. 21.)
But says the same author, “ It is a settled and well established principle that if the owner part with the property in the goods taken there can be no felony in the taking, however fraudulent the means by which such delivery was procured.”
As upon an indictment for horse-stealing it appeared that the prosecutor was at a fair, having a horse there in the care of a servant, which he intended to sell, when he was met by the prisoner, to whom he was personally known, and who said to him, “I hear you have a horse to sell; I think he will suit my purpose; and if you will let me have him at a bargain I will buy him.” The prisoner and the prosecutor then walked into the fair toward the horse, and upon a view of him the prosecutor said to the prisoner, u You shall have the horse for £8,” and ordered his servant to deliver the horse to the prisoner, who mounted him, saying to the prosecutor that he would return immediately and pay him, and the prosecutor replied, "Very well.” The prisoner rode the horse away and.never returned.' Upon these facts the learned judge by whom the prisoner was tried directed an acquittal on the ground that there was a complete contract of sale and delivery, and that the property, as well as the possession, was entirely parted with; and a number of other cases are cited to the same effect. (Ibid. 24.)
He says the correct distinction in cases of this description seems to be, that if by means of any trick or artifice the owner of property is induced to part with the possession only, still meaning to retain the right of property, the taking by such means will amount to larceny; but if the owner part with not only the possession of the goods, but the right of property in them also, the offense of the party obtaining them will not be *180 larceny, but the offense of obtaining goods by false pretenses. (Ibid. 28.)
If the owner of goods parts with the possession for a particular purpose, and the person who receives the possession avowedly for that purpose has a fraudulent intention to make use of the possession as the means of converting the goods to his own use, and does so convert them, it is larceny. But if the owner intends to part with the property, and delivers possession'absolutely, and the purchaser receives the goods for the purpose of doing with them what he pleases, it is not larceny, although fraudulent means may have been used to induce him to part with them. (Lewis v. Commonwealth, 15 S. & R. 93.)
This distinction is aptly illustrated by the case in hand.
Keaton proved that the axe and handle were delivered to be returned (after the job was completed, using the axe in the meantime to cut the wood, as must be inferred). Now if the possession of the axe and handle was parted with for that particular purpose and the prisoner received the possession avowedly for that purpose, having the fraudulent intention of making use of the possession as the means of converting them to his own use, and did so convert them, it was larceny; and if, as to the bacon, flour, coffee, and other articles, the owner intended to part with the property in them, and delivered the possession of them absolutely to the prisoner, and he received them for the purpose of consuming them or doing with them what else he pleased, it was not larceny, although he might have used fraudulent means to induce the owner to part with them, because they were not taken invito domino — without the owner’s permission.
The instructions of the court below to the jury are in conflict with the law of the case, as herein expressed, and prejudicial to appellant. Wherefore the judgment is reversed and the cause is remanded with directions to award a new trial, and for further proceedings consistent herewith.