Smith v. Commonwealth.

CASE 42.—PROSECUTION AGAINST CHARLES SMITH FOR
HORSE STEALING.—September 23.

# Smith v. Commonwealth

Appeal from Hardin Circuit Court.

JOHN ALLEN DEAN, Special Judge.

Defendant convicted and appeals—Affirmed.

1. Larceny—Evidence—Sufficiency.—Evidence held to sustain a
conviction for horse stealing.
2. Same—Question for Jury.—In a trial for horse stealing, held
a question for the jury whether accused's hiring of the horses
was a pretense for the fraudulent purpose of converting them
to his own use, or a hiring in good faith, with intent to
return them to the owner.
3. Same—Facts Constituting Larceny—"Horse Stealing."—If ac-
cused acquired possession of horses under a false and fraudu-
lent pretense of hiring them, and with a felonious intent
to convert them to his own use and to deprive the owner
permanently of them, he was guilty of horse stealing within
Ky. Stats. 1903, section 1195, without proof of a subsequent
sale or other wrongful disposition by accused; but, if he
hired the horses in good faith and was prevented from return-
ing them by the owner's act in having him arrested, he was
not guilty.
4. Criminal Law—Accused's Sanity—Evidence—Sufficiency.—Evi-
dence held insufficient to show that accused was insane at
the time of his conviction of larceny.
5. Same—Evidence.—An opinion as to accused's insanity is
entitled to little weight where the witnesses are not experts,
and do not testify to acts showing insanity.

IRWIN & IRWIN for appellant.

1. Our contention is that a person who has obtained possession
of property fraudulently, and with intention to convert it to his

vol. 129—28

Smith v. Commonwealth.

own use, must subsequently do some overt act towards carrying out that intention before he can be found guilty of larceny, and the overt act must be something other than that which he agreed to do when ne obtained the possession, and other than that for which the possession was delivered to him.

2. The instructions were erroneous.

3. The verdict is against the law and evidence.        e

### AUTHORITIES CITED.

Roberson's Criminal Law, vol. 1, secs. 417, 418, 425; State v. Humphrey, 78 Am. Dec., 605; Elliott v. Commonwealth, 12 Bush. 176; Am. & Eng. Ency. of Law, 1 ed., vol. 4, pp. 673, 677.

JAMES BREATHITT, Attorney General, and TOM B. Mc-GREGOR, Assistant Attorney General, for Commonwealth.

Our conception of the law leads us to believe that the court below stated the law correctly; that the matter hinges upon the intuition to steal or carry away or convert to the use of the one taking the goods or property under such intention, and not on the fact that he followed up such intention by converting to his use the property that he took.

### CITATIONS.

Alexander v. Commonwealth, 14 Ky. Law Rep., 290; Roberson's Criminal Law, sec. 417, 418; Kentucky Statutes, sec. 1195.

· OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

By the verdict of a jury and judgment of the Hardin circuit court, appellant, following the return of an indictment against him for horse stealing, was convicted of that crime, and his punishment fixed at confinement in the penitentiary for a term of three years. He insists that the judgment of conviction should be reversed because (1) the verdict of the jury was contrary to law, and without support from the evidence; (2) that the court failed to properly instruct the jury, and should have peremptorily in-

structed them to find him not guilty; (3) that he did not receive a fair trial owing to his unsoundness of mind and consequent inability to understand the nature of the crime charged against him, or to inform his counsel of the facts upon which his defense should have been predicated, and was without money to procure the attendance of witnesses or otherwise prepare for trial.

The salient facts furnished by the bill of evidence are, in substance, that appellant went to the livery stable of Harve Bland, at Glendale, Hardin county, and, representing himself to be in the employ of the Cumberland Telephone Company, hired of Bland a pair of horses with which to drive to Munfordville, 30 miles distant, for the purpose, as he said, of counting the poles supporting the wires of the telephone company between Glendale and Munfordville. Appellant agreed with Bland to pay for the use of the buggy and horses at the rate of $3 per day, and return them on the following day. Upon these terms he received the buggy and horses, and, leaving Glendale in the morning, reached Munfordville late in the afternoon of the same day. On the way he stopped at the village of Bonnieville at noon, and there got a meal for himself, but did not have the horses fed. Some hours after appellant's departure from Glendale, Bland learned that he did not pay his hotel bill at Glendale or for the noon meal he took at Bonnieville, and also ascertained from the manager of the telephone company owning the line in operation between Glendale and Munfordville that it belonged to the Home, and not the Cumberland, Telephone Company, and, furthermore, that the manager was unacqainted with the appellant, and knew nothing of the alleged mission upon which he had gone to Munfordville. The

foregoing facts excited the fears of Bland as to the safety of his buggy and horses, and led him to believe appellant an impostor, so he telephoned the sheriff of Hart county, at Munfordville, and directed him to arrest appellant upon his arrival there, which that officer did, at the same time taking in charge the buggy and horses. On the same day the property mentioned was delivered to Bland and appellant taken by rail to Elizabethtown and placed in jail, where he remained until indicted and tried.

It was admitted by appellant on the trial that he did not pay his hotel bill at Glendale, or for the meal at Bonnieville, but affirmed that he expected to pay both and for the hire of the buggy and horses upon his return to Glendale, and also admitted by him that he had no money when he left Glendale or upon reaching Munfordville. Indeed, the latter fact was established by the testimony of the sheriff of Hart county, who searched the person of appellant immediately following his arrest. Appellant further admitted that he did not count the telephone poles on the way to Munfordville, but claimed it was his purpose to do so in returning from that place to Glendale. On appellant's trial it was proved by the Commonwealth that the telephone line, the poles of which appellant claimed to have been employed to count, belonged to the Home, and not the Cumberland, Telephone Company, and the manager or agent of the Home Telephone Company residing in Hardin county and its agent at Munfordville testified that the former was charged with the duty of keeping the poles and wires of the Home Telephone Company between Elizabethtown and Munfordville in repair, and neither knew appellant or of his alleged employment to count the poles.

Although at the time of hiring the buggy and horses

of Bland appellant represented that he had been employed by the Cumberland Telephone Company to count the telephone poles between Glendale and Munfordville, he declared upon his trial that he had been employed to do that work by one West, of Louisville, an agent of the Home Telephone Company under whom he claimed to have worked three months in Louisville before going to Glendale. He was, however, unable to state upon cross-examination the first name or initial of West, or what position he held in the service of the Home Telephone Company. Appellant was also unable to give the location of West's place of business, except to say that it was in the second story of a house somewhere on Chestnut street in the city of Louisville. No effort was made by appellant before trial to procure the attendance of any witness of the name of West, nor was there until his trial began any intimation from appellant that West had employed him to count the telephone poles between Glendale and Munfordville. The two telephone agents introduced by the Commonwealth did not know and had never heard of West or of his connection with the Home or Cumberland Telephone Companies. The Commonwealth introduced a witness who met appellant in the public road about three-quarters of a mile from Munfordville. According to the testimony of this witness, appellant asked him how far it was to Munfordville, whether there were any horse buyers in the town and their names, and how far it was from Munfordville to Rowlett's Station, from Rowlett's to Horse Cave, and from the latter place to Cave City. The places named are all situated upon the Louisville & Nashville Railroad in the order named, and that railroad is the one upon which appellant would travel

in going from Munfordville to Tennessee, of which State he claimed to be a resident.

In view of the foregoing facts, we are unable to sustain appellant's contention that there was no evidence to support the verdict of the jury declaring him guilty of the crime charged. Obviously there was not such an absence of evidence as would have authorized a peremptory instruction, and it was for the jury to determine whether the hiring of the horses by appellant was a pretense and for the fraudulent and felonious purpose of converting them to his own use, or a hiring in good faith with the intent to return them to the owner. Section 1195, Ky. Stats., 1903, provides: "If any person shall steal a horse, mare, jack, or jennet, he shall be confined in the penitentiary not less than two, nor more than ten years." If appellant got possession of Bland's horses under the false and fraudulent pretense of hiring them, but without intention of returning them to the owner, and with the felonious intention of converting them to his own use and depriving the owner permanently of them, this constitutes horse stealing in the meaning of the statute. And, if the possession of the horses was obtained by appellant as we have indicated, the mere removal of them by appellant from the owner's custody amounted to a conversion of them to his (appellant's) own use without proof of a subsequent sale or other wrongful disposition of them by him. On the other hand, if appellant hired the horses in good faith with the intention of returning them, and was prevented from doing so by the act of Bland in having him arrested, he was not guilty of the crime charged. The doctrine in question is thus stated in Roberson's Criminal Law, section 417: "But if a person with the intent to steal, obtains the actual possession of prop-

erty, though by delivery of the owner, or an agent authorized to transfer the ownership therein, and the latter intends to part with the possession only, and not the right of property, the taking in this manner in pursuance of the felonious intent will constitute larceny. Thus, where one with the felonious intent to convert to his own use, borrows or hires a horse or carriage or obtains the possession of any other chattel under pretense of a loan, or receives an article of clothing to be delivered to another or a sum of money with which to pay a bill for the other, he commits larceny. In such cases even proof of a subsequent sale or conversion is not necessary.'' Roberson's Criminal Law, section 418; Alexander v. Commonwealth, 20 S. W. 254, 14 Ky. Law Rep. 200. Careful examination of the instructions given by the trial court convinces us that they substantially conform to the law as herein announced, and we have been unable to discover that any feature of the law applicable to the facts of the case was omitted from the instructions. Consequently the jury were not improperly instructed.

We do not think appellant should have been granted a new trial upon the ground that he is and was at the time of his conviction of unsound mind. The several affidavits filed in support of this ground are by no means convincing. None of the affiants knew appellant before his arrest. Consequently they are unacquainted with his past life or family history. Without being experts or testifying as to acts showing unsoundness of mind, they merely express the opinion that such was and is his condition. Such testimony is of little weight. If, as stated in the affidavit of one of his counsel, appellant's condition of mind during the trial was such as to prevent his giving assistance to counsel in the preparation of his defense, that fact

was known to counsel at the time of and during the trial, yet insanity or imbecility of mind was not relied on as a defense, nor was it then brought to the attention of the trial court, or a continuance asked in order to procure evidence to sustain such ground of defense. The testimony given by appellant upon the trial shows him to be a fairly intelligent person. Indeed, many of his statements proved him to be both plausible and resourceful in protecting himself. We find nothing in the record to convince us that appellant did not have a fair trial.

The judgment is therefore affirmed.