CASE 44.—PROSECUTION AGAINST L. SCHANG FOR LAR-
CENY AND FOR OBTAINING MONEY UNDER
FALSE PRETENSES.—January 19.

# Commonwealth v. Schang

Appeal from Jefferson Circuit Court; Criminal
Division.

JOSEPH PRYOR, Judge.

From the judgment sustaining demurrer to the
count charging larceny the Commonwealth appeals—
Affirmed.

1. Larceny—Indictment—Sufficiency.—An indictment for larceny,
which alleges that accused represented to a member of a
firm that a live stock inspector had condemned as unfit for
food meats owned by the firm, and for having which the grand
jury was about to indict the firm, and that accused could
settle the matter with the inspector for $150 and prevent the
firm from being indicted; that the member delivered a check
of the firm for $150 to accused, who obtained the proceeds
thereof intending to convert the same to his own use and
converted the same; that accused did not deliver the check
or its proceeds to the inspector; that his statements were
tricks to obtain the check and money, but which fails to
allege that the representations of accused were false, and
which fails to allege that the inspector did not prevent the
grand jury from indicting the firm—does not charge larceny
of the check or its proceeds by means of a trick.

2. Larceny—Elements of Offense.—Where the owner of property
parts with the possession thereof for a particular purpose,
and the person receiving the possession avowedly for that
purpose has at the time a fraudulent intent to make use of
the possession as the means of converting the property to
his own use, and does not convert it, he is guilty of larceny,
but where the owner parts, not only with the possession of
the property, but with the title also, the offense is not
larceny, but is false pretenses.

Commonwealth v. Schang.

3. Larceny—Indictment—Sufficiency.—An indictment for larceny which alleges that accused represented to a member of a firm that a live stock inspector had condemned as unfit for food, meats owned by the firm, and for having which the grand jury was about to indict the firm, and that accused could settle the matter with the inspector for $150, and prevent the firm from being indicted, that the member delivered a check of the firm for $150 to accused, who obtained the proceeds thereof feloniously, intending to convert the same to his own use, does not charge larceny, since there was no retention of ownership by the giver of the check at the time of its delivery.

TOM B. McGREGOR, Assistant Attorney General, for appellant.

AARON KOHN of counsel.

The question is, is it larceny for appellee, when he is given a check with which to bribe an officer of the law to have same cashed and appropriate it to his own use and benefit, and fail to apply it to the unlawful use of bribery? It is very clear that if he had given this check to the official, there could have been no larceny charge. The witnesses on the indictment seem to be Keeley Brothers. It seems that they would all be guilty of a public offense, and it seems to be questionable whether upon their testimony an indictment could be sustained against appellee. We are constrained to be of the opinion that the demurrer was properly sustained to this count of the indictment.

### AUTHORITIES.

Robinson's Crim. Law, sec. 425; Elliott v. Comth., 12 Bush 176; Smith v. Comth, 96 Ky. 85.

EDWARDS, OGDEN & PEAK for appellee.

### POINTS AND AUTHORITIES.

1. The demurrer was properly sustained because the facts alleged in the indictment show that witness, Keeley, parted not only with the possession, but with the property in the check in question. (Elliott v. Comth., 12 Bush 176; Miller v. Comth., 78 Ky. 15; 1 Roberson Crim. Law, sec. 418.)

2. The indictment is not sufficiently direct and certain as to the property taken, and shows on its face that the defendant

came into the possession of the money lawfully and without trick or device, and, therefore, does not state an offense. Again, the indictment does not properly charge the defendant with the stealing of the check, and the facts as alleged show that the check was the article which passed from Keeley to defendant. (1 McClain, sec. 592; State v. Collins, 72 N. Carolina 144; 1 McClain, sec. 652; Comth. v. Merrifield, 4 Met. (Mass.) 478; State v. Eddins, 10 La. 229; Grant v. State, 35 Fla. 581; Comth. v. Butterwick, 100 Mass. 1; People v. Cohen, 8 Cal. 42; People v. Cox, 40 Cal. 275; Wharton's Pleading & Practice, sec. 703.)

OPINION OF THE COURT BY CHIEF JUSTICE SETTLE— Affirming.

The grand jury of Jefferson county found and returned an indictment against the appellee, L. Schang, containing two counts; the first charging him with the crime of grand larceny, and the second with the crime of obtaining money and property by false pretenses. A demurrer was filed by appellee in the court below to each of the counts of the indictment, and was sustained by that court as to the first and overruled as to the second. From so much of the judgment as sustained the demurrer to the first count of the indictment, the Commonwealth has appealed.

The first count of the indictment is in the following words: "That the defendant, L. Schang. in the county of Jefferson, and before the finding of this indictment, did feloniously steal, take, and carry away one hundred and fifty dollars ($150.00) in currency of the United States, National Bank notes, or treasury notes, the exact description of which is to the grand jury unknown, the property of George Keeley and William Keeley, doing business as Keeley and Brother; that the defendant, L. Schang, did on or about the 6th day of September, 1906, come to the said George Keeley, a member of said firm of Keeley and Brother, and represent and state to him that,

whereas Dr. S. A. Bradley, then live stock inspector
of the city of Louisville, a ministerial officer author-
ized by law to inspect and condemn meats in the city
of Louisville, had condemned a lot of hams belonging
to said firm as unfit for sale as human food, and that
the said Keeley and Brother, were about to be in-
dicted before the grand jury, and that he could fix up
the matter with Dr. Bradley and prevent the indict-
ment and fix everything all right for $150.00; that
said sum was to be used as a bribe to said Bradley
and to be delivered to him; that thereupon the said
George Keeley delivered to said defendant a check
of Keeley and Brother upon the Western National
Bank, a corporation organized to do a banking busi-
ness, in the city of Louisville, by which the said bank
was ordered to pay to the order of George Keeley
the sum of $150.00, and the said George Keeley in-
dorsed said check and delivered it to the said de-
fendant, Schang, who afterwards indorsed the same
and obtained the money thereon at the said Western
National Bank, to wit: the sum of $150.00; that the
statements of said Schang were tricks and devises
and pretexts and artifices resorted to by him for the
purpose of obtaining the said check, and that said
check, or the proceeds thereof, was never delivered
to the said Bradley; that the sum of $150.00 was
obtained by the defendant by tricks and artifices and
the said Keeley and Brother were induced to part
with the possession thereof to be delivered to the said
Bradley, and the said defendant at the time intended
to feloniously convert the same to his own use and per-
manently deprive the owners thereof of their prop-
erty and did take and fraudulently obtain the said
check by said tricks and artifices and thereby felon-
iously obtain said money and appropriated it to his

own use, feloniously and with the intent to deprive
the owners thereof, said money belonging to and
being the property of said Keeley & Brother, con-
trary to the statutes and against the peace and dignity
of the Commonwealth of Kentucky." It will be ob-
served that the facts recited in the first count of the
indictment as constituting the crime of grand larceny
are, in substance, that appellee represented to one of
the firm of Keeley & Bro., meat dealers that S. A.
Bradley, live stock inspector of the city of Louisville,
had condemned as unfit for human consumption a lot
of hams owned by the firm and for having which the
grand jury was about to indict the firm; that he
(appellee) could settle the matter with Bradley for
$150, and thereby prevent the firm from being in-
dicted; that the member of the firm of Keeley & Bro.
to whom appellee made these representations there-
upon delivered the check of the firm for the above
amount to appellee, who obtained the proceeds there-
of, feloniously intending to convert the same to his
own use, and did so convert it, and, further, that
appellee did not deliver the check or its proceeds to
Bradley, and that his statements to the member of
the firm of Keeley & Bro. were tricks, devices, and
artifices employed by appellee to obtain the check and
money. It will also be observed that the indictment
does not charge that the representations of appellee
upon which it was alleged he obtained the $150 were
false. If it was true as represented by him that
Bradley, as live stock inspector, had condemned the
hams, and the grand jury were about to indict the
firm of Keeley & Bro. for having them for sale, and
that Bradley was willing to prevent the indictment
for $150, how can it be said that what appellee rep-
resented to the giver of the check was a trick, device,

or artifice to obtain the check? It will further be observed that the indictment also fails to allege that Bradley did not prevent the grand jury from indicting Keeley & Bro.; and while it is alleged that appellee did not deliver the check or its proceeds to Bradley and that he converted both to his own use, it does not charge that this was not done with Bradley's consent, or that his failure to deliver the check or money to Bradley was not at the instance or direction of the giver of the check. In view of the omission from the indictment of these averments of fact essential to constitute the crime attempted to be charged by the first count, we must conclude that the indictment was fatally defective. We are further of opinion that on yet another ground the indictment must be held fatally defective. The facts alleged show that the giver of the check willingly parted with the title thereto and its proceeds, as well as the possession. Where the owner of property merely parts with the possession for a particular purpose, and the person who received the possession avowedly for that purpose has at the time a fraudulent intention to make use of the possession as the means of converting the property to his own use, and does so convert them, it is larceny. 1 Wharton, Crim. Law, section 886; Commonwealth v. Williamson, 96 Ky. 1, 16 Ky. Law Rep. 197, 27 S. W. 812, 49 Am. St. Rep. 285.

The doctrine in question is thus stated in Roberson's Criminal Law, section 417: "But if a person, with the intent to steal, obtains the actual possession of property, though by delivery of the owner or an agent authorized to transfer the ownership therein, and the latter intends to part with the possession only and not the right of property, the taking in this

manner in pursuance of the felonious intent will con-
stitute larceny. * * *" Smith v. Commonwealth
(Ky.) 112 S. W. 615. But a different rule applies
when the owner parts under such circumstances with
the right of property. An excellent statement of the
latter rule is contained in the case of Miller & Smith
v. Commonwealth, 78 Ky. 15, 39 Am. Rep. 194, where-
in the court, speaking through Judge Cofer, said:
"The rule as stated by Russell (2 Russell, 29) and
approved by this court is that if, by trick or artifice,
the owner of property is induced to part with the
possession only, still meaning to retain the right of
property, the taking by such means will amount to
larceny; but, if the owner part with not only the
possession of the goods, but the right of property in
them also, the offense of the party obtaining them
will not be larceny, but the offense of obtaining goods
by false pretenses." Elliott v. Commonwealth, 75
Ky. 176. Applying this test to the case before us,
we have only to ascertain whether the firm of Keeley
& Bro. parted with their right of property in the
money for which the check to appellee was given. Of
this we think the language of the indictment leaves
no doubt. There was no retention of ownership or
possession by the giver of the check at the time of its
delivery; on the contrary, the transfer and delivery
of both title and possession was actual and absolute.
Appellee neither promised, was required or expected
to return the check, its proceeds, or any part thereof
in the event Bradley should refuse to receive it. If
the transaction were proved as alleged in the first
count of the indictment, it would show an attempt on
the part of the giver of the check to bribe a municipal
officer of the city of Louisville, while the same trans-
action, if proved according to the facts alleged in the

second count of the indictment, would show appellee guilty of obtaining money by false pretenses.

Being of the opinion that the lower court did not err in sustaining the demurrer to the first count in the indictment, the judgment is affirmed.