CASE 17—INDICTMENT—OCTOBER 9.

# Smith, &c., v. Commonwealth.

APPEAL FROM HARRISON CIRCUIT COURT.

LARCENY—HORSE-STEALING.—If the possession of property is obtained by lawful means there can be no larceny, even though it is after-terwards appropriated to the use of the taker, unless the intent to appropriate it existed in the mind of the taker at the time it came into his hands.

Upon the trial of appellants under an indictment for horse-stealing, it appearing that one of them had obtained possession of the horse charged to have been stolen, under a contract with the owner by which he was to have the care and use of the horse for a certain time, and that he and his co-defendant afterwards sold the horse and appropriated the proceeds to their own use, it should have been left to the jury to determine, under proper instructions of the court, whether or not the intent to appropriate the horse existed in the mind of the defendant who received him from the owner at the time the horse came into his possession.

C. A. BOARD FOR APPELLANTS.

The appellants having gained the possession of the property appropriated with the consent of the owner, and without felonious intent, the subsequent appropriation was not larceny. The court erred in refusing the instructions asked. (State v. Holmes, 57 Am. Decisions, 275; Robinson v. State, 78 Am. Decisions, 487; 12 Am. & Eng. Enc. of Law, p. 770, sec. 5; Same, pp. 771 and 772; Morrison v. State, 50 Am. Reports, 120, 121; Billiard v. State, 30 Texas, 368; Quinton v. State, 28 Am. Reports, 396; Johnson v. State, 1 Texas Court of Appeals, 118; Dunn v. State, 12 Texas Court of Appeals; 2 Wharton's Criminal Law, sec. 1860; Bishop's Criminal Law, sec. 864; Hill v. State, 57 Wisconsin, 377.)

WM. J. HENDRICK, ATTORNEY-GENERAL, FOR APPELLEE.

The instructions given were clear and unambiguous, containing a recital of every fact necessary to constitute the guilt of the defendants, and there existed no necessity whatever for any additional instructions.

CHIEF JUSTICE QUIGLEY DELIVERED THE OPINION OF THE COURT.

Appellants, Elmer Smith and Morgan Goddard, were indicted in the Harrison Circuit Court for horse-steal-

ing. They were tried, found guilty, and sentenced
to confinement in the penitentiary each for four years.
The allegations of the indictment under which they
were found guilty read as follows:

"The said Elmer Smith and Morgan Goddard on
the       day of November, 1893, in the county and
State aforesaid and before the finding of this indict-
ment, did feloniously combine, confederate and con-
spire to and did feloniously steal, take and carry
away a horse, to wit: A mare, the personal property
of L. S. Burgess, with the felonious intent to convert
the said mare to their own use, and to deprive the
said owner thereof."

It appears from the evidence that appellants resided
in the town of Sadieville, Harrison county, Kentucky,
and that L. S. Burgess, a farmer, resided near said
town, and that during the summer and fall of 1893
both Goddard and Smith had been working for said
Burgess; also, that in August or September, 1893,
appellant, Morgan Goddard, contracted with said Bur-
gess to raise a crop for him, on his, the said Burgess'
farm, during the year 1894, and wanted the use of a
horse. Burgess said to Goddard: "I have a horse that
has the fistula; you take it and use it as you please,
pay for its pasturage, keep it shod, treat it for the
fistula and return it to me in the spring."

In November, 1893, Goddard procured a buggy,
hitched the horse to it, and drove to Cynthiana. It
was county court day. Elmer Smith, a lad sixteen
or seventeen years of age, also went to Cynthiana,
where he met Goddard. They got drunk, concluded
to go to Cincinnati and put up the horse and buggy

for sale on the public street, and sold them for twenty-one dollars. They went to Cincinnati and returned to Sadieville the latter part of the same week. Appellants' motions in arrest of judgment and for a new trial were overruled, to which they excepted, as well as to the instructions given and refused by the court.

Appellants asked the court to give to the jury the following instructions, which the court refused to do : "The court instructs the jury that to find the defendants guilty of larceny they must believe that, at the time the defendant Goddard obtained possession of Burgess' horse, he must then have had the purpose and intent to convert the property to his own use and benefit and to deprive the owner of his property feloniously ; that unless the felonious intent was proven at the time of the taking of the horse, the law is for the defendant, and the jury will so find." Second. "The court instructs the jury that the felonious intent must exist at the time of the taking, and that no felonious intent subsequent, or wrongful conversion, will amount to a felony."

The general and common law rule is, that when property comes lawfully into the possession of a person, either as agent, bailee, part owner, or otherwise, a subsequent appropriation of it is not larceny, unless the intent to appropriate it existed in the mind of the taker at the time it came into his hands. Also that if the possession of the property is obtained by lawful means, there can be no larceny at common law, even though it is afterwards appropriated to the use of the taker. (12 American and English Encyclopædia of Law, pages 770 and 790 ; Snapp v. Com-

monwealth, 82 Ky., 173; Elliott v. Commonwealth,
12 Bush, 176.)

Mr. Bishop on Criminal Law, in section 866, says:
"If one hires a horse and sells it before the journey
is performed, or sells it after, but before it is returned,
he commits no larceny in a case where the felonious
intent came upon him subsequently to receiving it
into his possession; and if one hiring a horse in-
tends, when he receives it, to convert it to his own
use, he thereby commits larceny. No subsequent act
of sale or conversion is, in such case, necessary to
complete the offense." And this court, in the case
of Elliott v. Commonwealth, 12 Bush, 176, said: "The
material ingredients to constitute the crime of larceny
are that the goods must be taken *animo furandi*,
and against the will of the owner of them; hence,
in a class of cases where it appears that the goods
were taken by the delivery or consent of the owner,
or of some one having authority to deliver them, and
they are converted by the party to whom they are
delivered, it is often a very difficult question to de-
termine the nature of the offense."

Goddard came into the possession of the horse law-
fully, and by virtue of his contract with Burgess he
acquired a special property in the horse, that of the
right of user, and the exercise of control and owner-
ship over it from the fall of 1893 to the spring of 1894.
He had resorted to no trick, artifice, fraud or decep-
tion to obtain its possession from the owner, and it
should have been left to the jury to determine as a
question of fact, from all the circumstances of the
case, under proper instructions of the court, whether

or not the intent to appropriate the horse existed in the mind of Goddard at the time the horse came into his possession.

The court erred in refusing to instruct the jury on this point. The substantial rights of the defendants having been prejudiced by failure so to do, the judgment of the lower court is reversed.