20 P.(2d) 924

## MAESTAS v. AMERICAN METAL CO. OF NEW MEXICO et al.

### No. 3812.

Supreme Court of New Mexico.

March 6, 1933.

Rehearing Denied April 17, 1933.

Gilbert & Hamilton and A. M. Edwards, all of Santa Fe, for appellants.

Francis C. Wilson and Herbert K. Greer, both of Santa Fe, for appellee.

BICKLEY, Justice.

Plaintiff (appellee), an employee of appellant American Metal Company, while in the course of his employment, on July 24, 1929, suffered an injury to his eyes, resulting from an accidental explosion.

Claim for compensation was filed November 9, 1931, which was answered by a denial and a plea that the claim was barred by the limitation contained in the Workmen's Compensation Act (Comp. St. 1929, § 156-101 et seq.). Plaintiff then filed an "Amended Petition for Review and Modification of Award." It is therein alleged that both of plaintiff's eyes were injured by the explosion; that the left eye was enucleated and that plaintiff was allowed compensation at the rate of 110 weeks for the loss of his left eye; that 106 weeks of such compensation had been paid; that by reason of the aforesaid accident, plaintiff's right eye also was injured and his sight permanently impaired, for which reason plaintiff is permanently, totally disabled from engaging in any remunerative employment. Plaintiff prayed for a review of the original award and that such award be modified and increased. To this amended petition an answer was filed, pleading full payment for loss of the left eye, certain denials and also the bar of the statute because of failure to give notice of the injury and failure to file the claim in time. Just what is intended by

the prayer in the amended petition is not clear as the record does not show any award for the right eye or any previous evidence presented in any manner to show that such injury existed. Whatever may be the purpose of this amended petition, it is now conceded by counsel that the theory of review and modification of the original award was abandoned at the trial, and counsel here argue on the theory of separate and distinct injuries.

The trial court awarded judgment for plaintiff. The appellant relies upon four propositions for reversal. In the view we take of the case, it is only necessary to consider the first one which is as follows: "The lower court erred in entering a judgment in this cause over the objection of defendants, the claim having been barred because it was not filed within the time provided for under the provisions of the Workmen's Compensation Act of New Mexico."

Appellant relies upon the provisions of section 156-113, Comp. St. 1929, which provides:

"The compensation herein provided shall be paid by the employer to any injured workman entitled thereto in monthly installments as nearly equal as possible excepting the first installment which shall be paid not later than thirty-one days after the date of such injury. Any workman claiming to be entitled under this act to compensation from any employer on account of injury suffered by accident arising out of and in the course of his employment shall give notice in writing of such accident and of such injury to such employer within thirty days after the occurrence thereof, unless prevented by such injury or other causes beyond his control, and, if so prevented, as soon as the same may be reasonably done, and at all events not later than sixty days after such accident; Provided, that no such written notice shall be requisite where the employer or any superintendent or foreman or other agent in charge of the work in connection with which such injury occurred had actual knowledge of the occurrence thereof. Except in the case of such workman being prevented from giving notice by his injuries and in case where no notice is required no workman failing to give such notice within said thirty days after such injuries occurred shall be allowed to recover any compensation on account of such injury under any circumstances whatever for the period he shall remain in default in giving such notice. In event such employer shall fail or refuse to pay the compensation herein provided to such workman after having received such notice, or, without such notice when no notice is required, it shall be the duty of such workman, insisting upon the payment thereof, to file a claim therefor in the manner and within the time hereinafter provided. In event he shall either fail to give such notice within the time required, or fail to file such claim within the time hereinafter required, his claim for such compensation and all right to the recovery of the same and the bringing of any legal proceeding for the recovery thereof shall be and is hereby forever barred. In case of death of any workman who would himself have been en-

titled had such death not occurred, to recover from such employer on account of any such injuries under the terms hereof, claim may be filed therefor on behalf of his dependents as provided in section 16 (156-116) hereof. In event of the failure or refusal of any employer to pay any workman entitled thereto any installment of the compensation to which such workman may be entitled under the terms hereof, such workman shall be entitled to enforce the payment thereof by filing in the office of the clerk of the district court a claim which shall be signed and sworn to by the injured workman or some one on his behalf before any officer authorized to administer oaths, and filed not later than six months after such refusal or failure of the employer so to pay the same."

And also upon our holding in Caton v. Gilliland Oil Co., 33 N. M. 227, 264 P. 946, 947, as follows: "If anything can be said to be made plain by this remarkably complicated section, it is this: An employer having knowledge of the injury, must, within 31 days after its occurrence, pay the first installment of compensation. If the employer fails or refuses so to do, the workman must, within 60 days thereafter, file his claim for compensation. If he does not, his claim, his right, and his remedy are forever barred."

Counsel for appellee urge that because it is conceded that the employer seasonably commenced making payments in compensation for the loss of claimant's left eye, there arose no duty upon appellant employer to pay compensation for the right eye until the pay-

ments for the left one had been completed over a course of 110 weeks, and relies upon section 156-118, Comp. St. 1929, which contains a direction that payments of compensation for different injuries, arising out of the same accident, shall run consecutively and not concurrently. If failure to pay alone were all we had to consider, this contention would present a very interesting question. It is difficult to discover a good reason for saying that, when distinct and separate injuries occur simultaneously as the result of one accident, the employer would be relieved from making payment of the first installment, for each injury "not later than 31 days after the date of such injury." Which of the several injuries claimed shall the employer first pay compensation for? Payment for each injury or acknowledgment of the claim in some way is the only way the employer may protect himself from suit. Does section 156-118 deprive the claimant asserting several permanent injuries growing out of the same accident of the right to commence action if the employer seasonably commences payment for one of them and is silent as to the others? If the claimant commences action alleging a failure to pay the first installment within 31 days after the occurrence, may the employer enter a plea that the suit is prematurely brought because as he is paying for an acknowledged injury, he is not called upon to decide whether he will pay for the other injuries until all of the installment payments have been made for the conceded injury? It may be that after the employer has acknowledged the injuries and has paid the first in-

stallment on each that the section of the statute directing that the payments of compensation for different injuries shall run consecutively and concurrently, comes into play. This is pure speculation as far as this case is concerned, and it would be advantageous perhaps if the Legislature would clear it up.

■ However, we think that "fail" is distinguished from "refuse" which latter involves an act of the will, while the former may be an act of inevitable necessity. Taylor v. Mason, 9 Wheat. (U. S.) 325, 344, 6 L. Ed. 101; Bouvier's Law Dictionary. So we turn our attention to a consideration of whether there was a refusal by the employer to pay compensation for the right eye.

At the conclusion of the evidence, the trial court said: "Going" over the entire evidence, listening to it as I have, with a great deal of care, there remains a doubt in the mind of the court as to the entire proposition. I feel that the doubt should be resolved in favor of the claimant and judgment will be for the claimant."

Usually the claimant has the burden of proving his case. "The burden of proving that the claim was made within the time limit, rests upon the claimant." Schneider, Workmen's Compensation Law (2d Ed.) § 537; Heed v. Indus. Comm., 287 Ill. 505, 122 N. E. 801.

Where the ordinary statute of limitations is pleaded by the defendant, in an ordinary action, there exists a conflict among the adjudicated cases as to where rests the burden of proof as to when the cause of action accrued. See 37 O. J., Limitations of Actions, § 769. But where the filing of the claim for compensation in the office of the clerk of the district court, not later than 6 months after failure or refusal of the employer to pay the same, is limitation on the right of action, which is wholly statutory, and not a mere limitation upon the remedy, and is absolute and unconditional [Taylor v. American Employers' Ins. Co. of Boston, Mass., 35 N. M. 544, 3 P.(2d) 76], the burden is upon the claimant to prove compliance therewith [Watertown Nat. Bank v. Bagley, 134 App. Div. 831, 119 N. Y. S. 592; Shepard v. Kusch, 89 Misc. 112, 151 N. Y. S. 436, 438].

The accident resulting in the injuries occurred on July 24, 1929. The present claim was filed more than two years later.

■ Appellee's claim asserts an accident due to an explosion which injured both eyes. Appellant in its answers pleads that no written notice of claim of injury to right eye of claimant was given to the employer within 30 days after the accident nor within 60 days thereafter. It is not claimed that such written notice was given, so the first burden which claimant is required to discharge is that the employer "had actual knowledge of the occurrence thereof." Whether "occurrence thereof" refers to the accident or to the injury or to both, we do not find it necessary to decide. The evidence of the claimant was sufficient to bring home to the employer the knowledge requisite to dispense with the written notice. There

was evidence by claimant as to the conversations with Dr. Smith and Dr. Matthews, the company doctors, and Mr. Matson, the manager of the employer company, about payment of compensation for both his eyes. He testified that "they" promised to write to claimant, which they did as follows:

"Tererro, New Mexico, August 19, 1929

"Mr. Jose M. Maestas, Box 227, Espanola, New Mexico.

"Dear Sir: We have your letter without date, but mailed from Espanola, New Mexico, August 16th, in regard to compensation for eye injury while in our employ. As explained to you in person yesterday, your injury is classified as a specific case under the Corporation Laws of New Mexico; and it appears you are entitled to 110 weeks compensation. The weekly payment as we understand it will amount to 55% of your weekly earning at the time of injury. We are today advising the Maryland Casualty Co. (our insurance carriers) of your claim, and you will no doubt hear from them promptly, both in regard to compensation and further necessary medical or surgical treatment. Yours very truly, The American Metal Co. of New Mexico J. T. Matson, General Manager."

Later the claimant received a letter from the insurer, the Maryland Casualty Company, dated August 21, 1929, as follows:

"Mr. Jose M. Maestas, Box 207, Espanola, New Mexico.

"Dear Sir: I am today in receipt of letter from The American Metal Company enclosing carbon copy of your letter to them under recent date regarding your claim for compensation as a result of loss of one eye while in their employ on July 24th, 1929. As Mr. Matson has explained to you, the American Metal Company of N. M. are covered by Workmen's Compensation Insurance provided by the State of New Mexico. Mr. Matson also explained to you that your injury is one classified as a specific injury under the Compensation Laws of N. M. You are entitled to 55% of your average weekly wage, same being $13.47 for a specific length of time, same being 110 weeks. On August 20th I mailed your draft paying compensation to you for three weeks to the American Metal Company of N. M. and they will forward same on to you. Hereafter, we will mail you a compensation check in the amount of $13.47 per week until the full period of 110 weeks has expired. Regarding the necessity for you to return to Albuquerque for observation in about two weeks, this is your authority to do so at the expense of the Maryland Casualty Company. If you will furnish us an itemized statement covering your expenses I will mail you draft in reimbursement for same. Yours very truly, Wiley C. McNeill, Manager."

Counsel for appellee characterize these letters as dealing solely with the injury to appellee's left eye.

██ We think as plaintiff had been making claim for injury to both eyes, these letters raise a fair inference of refusal to pay compensation for the loss or impairment of more than one. In Sweeting v. Staten Island

& Midland Ry. Co., 176 App. Div. 494, 162 N. Y. S. 961, 962, it is said: "Plaintiff's averment that the city has 'not settled or adjusted, or offered to settle or adjust, the said claim' sufficiently meets the requirement of section 261 of the charter; as, from the absence of an offer or overtures for settlement, an inference of failure, omission, or refusal follows. Here 'neglected' or 'refused' are but the omission after opportunity to do some act for the city's protection."

Section 261 of the charter referred to (Greater New York Charter Laws 1901, c. 466), provided: "No action * * * shall be prosecuted or maintained against The City of New York, unless it shall appear by and as an allegation in the complaint * * * that at least thirty days have elapsed since the demand, claim or claims upon which such action * * * is founded were presented to the comptroller of said city for adjustment, and that he has neglected or refused to make an adjustment or payment thereof for thirty days after such presentment."

In Board of Sup'rs of Jefferson County v. Lessing, 129 Miss. 1, 91 So. 697, 698, the court had under consideration a statute as follows: "'a person having a just claim against any county shall first present the same to the board of supervisors thereof for allowance; and, if the board shall refuse to allow it, may appeal from the judgment of the board to the circuit court, or may bring suit against the county; and, in either case, if such person recover judgment, the board of supervisors shall allow the same, and a warrant shall be issued therefor.'" (Hemingway's Code Miss., § 3684.)

In that case, the claimant on August 3, 1920, filed with and presented to the supervisors the claim in question and requested its allowance. The supervisors had the claim marked "continued" and failed and refused to take any further action thereon for more than twelve months, and until the 15th of August, 1921, when appellee brought suit. The court said: "It will be noted from the statute that it is made a condition precedent to suit on a claim of this character that it first be presented to the board of supervisors for allowance, and that the latter 'refuse to allow it.'"

The court was of the opinion that it was a disallowance of the claim in the meaning of the statute. We think these principles apply to the case at bar. Manifestly, the requirement that notice be given is for the protection of the employer, in order that it may consider the claim and either pay it or refuse it. In the case at bar, plaintiff made two distinct claims. One for his left eye and one for his right eye. One claim the employer allowed and the other it rejected. If the employer has actual knowledge of the occurrence of the accident and has had a verbal request or demand upon him by the employee claiming to be injured for payment of compensation therefor, the employer's only means of protection from suit is by payment. The fact in the case at bar that the employer and its insurer availed themselves of this protection by acknowledging the obligation to pay

for the injury to claimant's left eye and paid first installment within 31 days after the accident and failed or refused to respond favorably to plaintiff's claim and demand for compensation for his right eye which he claimed was also injured shows an intention to stand suit if the claimant elected to commence one, and that such fact amounted to a strong inference of a "refusal" which would have warranted and required claimant to file his claim.

But this is not all. Claimant testified:

"Q. When was the first time you believed there was anything wrong with your right eye? A. Since the time I was injured.

"Q. At the time of the injury did you think there was anything wrong with your right eye? A. Yes, sir.

"Q. You thought at the time there was something wrong with your right eye? A. Yes, sir.

"Q. Do you remember the date? A. July 24, 1929.

"Q. July 24, 1929? A. Yes, sir.

"Q. At that time did you request any compensation for your right eye? A. How is that?

"Q. Did you request any payment for your right eye at that time? A. Well, I told Dr. Smith this, I asked Dr. Smith that I want to be compensated for my right eye because he told me I only had half the sight of the eye I had left in my right eye.

"Q. Now, at what time, when did they refuse to pay your compensation for your right eye? A. They refused in 1930.

"Q. In 1930, you don't remember the date? A. No, the last time I was over there to see Mr. Hoag was about the last days of August or first days of September, 1930."

Counsel for appellant rely upon that and counsel for appellee set out the following, occurring on redirect examination as detracting from the testimony heretofore quoted:

"Q. Did you ever have any cloudiness or floating spots in either eye before this accident? A. No, sir, and I would like to explain what Mr. Hoag told me when I went over there and told him that they had refused to pay anything for the injury of my right eye.

"Q. What did he say? A. I went over there and I told him that they had refused to pay anything for the injury to my right eye and he told me what are you going to do, are you going to sue? I said Yes I am going to file the complaint in court, and he said well don't you do it, all you need is at the time your hundred and ten weeks expire, you go and have an examination by some specialist and all you have to do is come to Dr. Smith with your report and he would fix me out. (Objection by counsel.)

"The Court: Who is Mr. Hoag?

"The Witness: He is some kind of officer for the American Metal Co.

"The Court: Some kind of officer?

"The Witness: Yes, General Manager or superintendent or something.

"Mr. Wilson: The witness knows better than that; he knows Katson is General Superintendent and Mr. Hoag is merely a boss of one of the * * * (statement not finished.)

"The Court: Mine Boss?

"The Witness: Yes.

"Mr. Wilson: He is not manager or superintendent.

"The Witness: I said he is some kind of officer.

"Q. Did he tell you this in the office? A. Yes, there was somebody else there.

"Q. Was this in the office of the company? A. Yes, sir."

█ Appellee's chief objection to the probative force of the appellee's testimony is that it is indefinite as to who "they" were, who refused in 1930, to pay the compensation for the disability now in question. It must be remembered that it was the plaintiff who was being examined in part by his own counsel. He had theretofore conducted his negotiations with the two company doctors and the company's manager. The court found: "That all matters relative to plaintiff's compensation award was arranged by the defendant employer."

It is fair to infer that "they" were persons whom appellee believed had a right to speak for the defendant employer. "They" did not embrace Mr. Hoag, the mine boss, because claimant told Mr. Hoag that "they" had refused to pay anything for the injury of his right eye. The appellee reached a settlement for the injury of his left eye and had concluded that the refusal of "they" to pay compensation for the other injury was of sufficient authenticity as a refusal for him to break off further negotiations with his employer and to declare to Mr. Hoag his intention to "file the complaint in court." If there was a doubt that "they" were persons having a right to refuse payment on behalf of the defendant employer, his counsel could have examined him further on the subject. The refusal to pay was an important factor in the case. After the appellee as a witness had fixed the employer's refusal to pay as prior to his talk with Mr. Hoag in the last of August, or first days of September, 1930, it does not appear to us that the purpose of his counsel by further questioning was to impeach the fact of the refusal to pay but rather to show by the further testimony of the appellee that the limitation of time for filing claim within 6 months after such refusal had been waived by Mr. Hoag's request upon him not to sue, and his assurance that it was not necessary to sue and that all he had to do was to wait, have another examination and then go to Dr. Smith who would fix it up for him, as to his right eye.

Counsel for appellee, who it is proper to say, were not his counsel in the lower court, do not contend that there was or could be such a waiver. The circumstances of the filing in the trial court by appellee of his amended petition for review and modification of

award, after the defendants had pleaded the bar of the statute, is a circumstance indicating a fear of disaster upon that issue.

From all of the foregoing, we are constrained to hold that the claim was not filed within the time required by law and therefore is barred and that judgment should therefore be reversed, and the cause remanded, and it is so ordered.

WATSON, C. J., and SADLER and HUDSPETH, JJ., concur.

ZINN, J., did not participate.