CALHOUN *v.* STATE.

(In Banc. June 9, 1941.)

[2 So. (2d) 802. No. 34557.]

R. D. Everitt, of Ruleville, for appellant.

**Geo. H. Ethridge,** Assistant Attorney-General, for appellee.

**McGehee, J.,** delivered the opinion of the court.

Upon an indictment charging him with the larceny of one diamond bar pin of the value of $85, the property of Mrs. E. O. Catledge, the appellant was convicted and sentenced to serve a term of two years in the state penitentiary, and he prosecutes this appeal.

Mrs. Catledge, who lived at Tutwiler, Mississippi, was asked, as a witness for the state upon the trial, to "tell the jury whether or not at any time during this year (1940) you lost a diamond bar pin?" Her reply was: "Well, I didn't exactly lose it. It was either taken or

misplaced. I wore the pin the 4th or 5th of April the last time. I remember pulling it off and dropping the safety catch. I picked up the safety catch, put it on the pin and dropped it in the handkerchief case where I kept it. The next day we moved on the other side of town and I didn't wear it any more. I started to dress on the 26th of April and started to get the pin and it was gone. We bought it from Mr. Weiler and he sent me a description of it. I didn't see it any more until they sent for me to identify it in Drew.'' She further testified as to the value of the pin, and of having identified it after its recovery from a pawn shop in Memphis, Tennessee, during the month of August of the same year.

At the time the pin was taken or misplaced, the appellant was employed at Ruscoe's Pressing Shop at Drew, Mississippi, and was so employed at the time it was later found. Clothing was received at this pressing shop from customers at Tutwiler and other nearby towns to be cleaned and pressed, but the appellant had no part in taking up the clothing or in transporting it to the shop. In fact, he was not shown to have been seen in Tutwiler at any time during the period from April to August, inclusive. Moreover, the proof disclosed without dispute that Mrs. Catledge did not send any clothing to this shop at any time during the month of April, 1940, but that she did so subsequent to the month of April and on through the month of August of that year. The appellant testified that some two or three weeks before this pin was recovered by the owner as aforesaid, he found it in the bottom of a large basket in which suits and dresses were placed when put in the truck to be carried to the shop to be cleaned and pressed, and that it was lying loose in the bottom of the basket when he was preparing to empty some paper from the basket after the clothing had been removed therefrom.

It was also shown that it was the duty of the appellant to search the clothing for money and other articles of value in order that they might be returned to the owner.

When anything was thus found, he was supposed to carry the same to the office and identify the article with the name of the owner of the garment from which it had been removed and place it in a desk provided for that purpose. It appears that he had always performed this duty faithfully in regard to all articles found in clothing, as he knew the owner or had the means of ascertaining the owner by reason of the ownership of the garment from which the same had been removed. But, on the occasion in question, it is shown that not knowing who owned this bar pin, and not having any immediate means of ascertaining the true owner, he laid it aside in some place other than in the desk in the office, and let it remain there, without the knowledge of his employer, for two or three weeks awaiting its being claimed; and that no claim therefor having then been made, he sent it to a pawn shop in Memphis by one Will Bibb, who frequently drove a truck to and from Memphis, and requested Bibb to ascertain its value at the pawn shop and try to obtain some money on it. When Bibb carried it to the pawn shop, he was arrested and placed in jail, and with' the result that the pin was soon recovered by Mrs. Catledge.

It was held in the case of Beatty v. State, 61 Miss. 18, that one who unlawfully takes another's personal property, not intending to steal, and afterwards converts it, intending to steal, is guilty of larceny; and it was likewise held that if the original taking is lawful and bona fide, a subsequent fraudulent conversion is not larceny, because there is no trespass. This decision is in line with the general rule in regard to when the appropriation of lost property constitutes the crime of larceny. In Smith v. Com., 96 Ky. 85, 27 S. W. 852, 49 Am. St. Rep. 287 that: ''The general and common law rule is that when property comes lawfully into the possession of a person, either as agent, bailee, part owner, or otherwise, a subsequent appropriation of it is not larceny, unless the intent to appropriate it existed in the mind of the taker at the time it came into his hands.''

In the case of State v. Dean, 49 Iowa, 73, 31 Am. Rep. 143; 36 A. L. R. 382, it was held that "the crime, if committed, must consist in the original taking. It cannot consist in a subsequent lack of diligence in attempting to find the owner, nor in a subsequent conversion." In 32 Am. Jur. 971, it is said: "It is the general rule, moreover, in view of the particular situation of lost property and consistent with the established principles as to rights therein, that a finder thereof may be guilty of larceny where, and only where, he appropriates the same to his own use with knowledge of, or the immediate means of ascertaining, the owner thereof and with felonious intent entertained at the time of the finding. Both elements are essential, and if either is lacking, the finder is not guilty of larceny. The requirement that at the time of finding, the finder's intent to steal must be accompanied by knowledge or notice as to the owner, has been said to constitute the only distinction between theft of lost goods and theft of other property." This announcement is in accord with what was held by this Court in Randal v. State, 4 Smedes & M. 349; Coon v. State, 13 Smedes & M. 246. Again in 32 Am. Jur. 975, it is said: "Within the rule that the felonious intent essential to larceny must exist in the mind of the taker at the very time of the taking, the time of the taking by one who finds property casually lost is the time of the finding, when the finder first takes it into his possession. Accordingly, the general rule is that an intent on the part of the finder to convert the property to his own use or to deprive the true owner thereof must co-exist with the act of finding and the reduction to possession in order to make out the offense, and that if it does not, as where his intent at that time is an innocent one such as the restoration of the property to its owner, he is not guilty of larceny, even though he later changes his mind, determines to convert the property, or fraudulently conceals or appropriates it. The finder of lost goods may lawfully take them into his possession, and if he does so without any felonious

intent at that time, a subsequent conversion of them to his own use, by whatever intent that conversion is accompanied, will not constitute larceny.''

In view of the positive testimony of Mrs. Catledge that she discovered on April 26, 1940, that this bar pin had been removed from where she had placed it in her home on the 4th or 5th of that month, and that she had sent no clothes to the pressing shop in the meantime, it would follow as a reasonable conclusion that some person who had access to her residence, or was a trespasser therein, had stolen the pin and had later sent it to the pressing shop on some garment from which it then became detached and lost in the basket. However, there is no proof that the appellant entered her residence and took it, nor was there any recent possession by him of the article after it was first missed by the owner. Then, too, he promptly gave a reasonable explanation as to how it came into his possession some four months later.

It was held in Davis v. State, 50 Miss. 86, that the possession must be recent after the loss in order to impute guilt; and that this presumption is founded on the manifest reason that, where goods have been taken from one person, and are quickly thereafter found in the possession of another, there is a strong probability that they were taken by the latter. That where the goods are bulky or inconvenient of transmission, or unlikely to be transferred, a greater lapse of time is allowed to raise the presumption than where they are light or easily passed from hand to hand, because in the latter case the goods may come to the accused through many persons. It was held in that case that where a man, in whose possession stolen property is found, gives a reasonable account of how he came by it, it is incumbent on the prosecution to show that the account is false. See also Jones v. State, 51 Miss. 718, 24 Am. Rep. 658; Foster v. State, 52 Miss. 695; Stokes v. State, 58 Miss. 677; Matthews v. State, 61 Miss. 155; Snowden v. State, 62 Miss. 100; and Harper v. State, 71 Miss. 202, 13 So. 882.

It is altogether reasonable that Mrs. Catledge may have been mistaken as to where she placed this pin when she last wore it, and that she may have pinned it on some garment prior to the time she missed it in April and then later sent the garment to the pressing shop. At any rate, we would be more justified in indulging this reasonable presumption than to assume, without proof, that the accused entered her home and stole the pin.

Assuming that the bar pin in question was found by the appellant under the circumstances related by him, since his version of the matter is entirely reasonable, and that he did not relinquish the custody and control of it while it remained in the pressing shop, it would appear that a different case is presented under the law than if he had placed it in the drawer of the desk in the office of his employer, and had later committed a trespass in removing the same from this place after his employer had become the bailee thereof for the benefit of whoever should call for it. In retaining it in his own custody, and under his control, under the circumstances testified to, it cannot be said from the testimony that he either knew the owner or had any immediate means of ascertaining who the owner was with any reasonable degree of certainty at the time he found it, or at the time he later converted it to his own use.

We are, therefore, of the opinion that the peremptory instruction requested by the appellant should have been granted.

Reversed and judgment here for the appellant.