STATE of Alaska, Appellant,

v.

Thomas H. CAMPBELL, Appellee.

No. 2294.

Supreme Court of Alaska.

May 21, 1975.

Peter A. Michalski, Asst. Dist. Atty., Catherine A. Chandler, Dist. Atty., Fairbanks, Avrum M. Gross, Atty. Gen., Juneau, for appellant.

David C. Backstrom, Asst. Public Defender, Fairbanks, Herbert Soll, Public Defender, Anchorage, for appellee.

Before RABINOWITZ, Chief Justice, CONNOR and BOOCHEVER, Justices.

## OPINION

BOOCHEVER, Justice.

Thomas H. Campbell was accused of having violated AS 11.20.260 which provides that one who finds lost property and appropriates it to his own use without either advertising his discovery in a paper of general circulation or notifying the police officer nearest to the place of the finding is guilty of larceny. An indictment was returned on June 11, 1974 charging the defendant with "wilfully, unlawfully and feloniously" finding and retaining certain specified items of personal property—silver

painted aluminum cans containing .22 caliber target ammunition, an ASAHI Pentax 300 mm. telephoto lens and Bushnell 7 x 35 power "sportcaster" binoculars—valued at more than $100.00 without taking either of the steps prescribed by AS 11.20.260 to find the lawful owner.[1]

On July 12, 1974, Campbell filed a motion in the superior court to dismiss the action on the ground that, insofar as the statute did not require proof of criminal intent and makes mere negligent conduct subject to the criminal penalties attaching to either grand or petit larceny set forth in AS 11.20.140, it was an unconstitutional denial of due process under the constitutions of the United States and Alaska. A hearing was held on July 18, 1974, and Judge Hepp granted the defendant's motion to dismiss.

The sole issue raised on this appeal is whether the superior court erred in granting the defendant's motion to dismiss the indictment based upon the court's conclusion that AS 11.20.260[2] does not require criminal intent for conviction and, therefore, constitutes a violation of due process of law guaranteed by the fourteenth amendment of the United States Constitution and art. I, § 7 of the Alaska Constitution.

The lower court's invalidation of AS 11.-20.260 rested solely on our holding in Speidel v. State.[3] That decision, in turn, was influenced by and to a great extent followed the United States Supreme Court's opinion in Morissette v. United States.[4]

---

[1]. The factual record before the court on this appeal as developed at the preliminary hearing is sparse. Detective John Strickfaden, the only witness to testify at the hearing, first became involved with this case in connection with a report concerning a larceny from an automobile which allegedly occurred on May 13, 1974. Certain items of personal property belonging to a Mr. Randall Pitney were stolen, or at least missing, from Mr. Pitney's car. The original complainant in this action was Mr. Scarborough who was watching the car for Mr. Pitney while the latter was working at the Chandalar Camp on the North Slope Alaska oil pipeline project. Scarborough reported that he had seen Campbell and two juvenile associates carrying some of the property from where it apparently had been stashed after it had been taken from the vehicle.

When Campbell was first approached by the police on the morning of May 15, 1974, he was a suspect in the reported larceny from a vehicle. After being advised of his rights, Campbell wrote out and signed the following short statement:

On Tuesday, the 14th of May, I was told about some .22 shells, .22 gun, camera. I was over at the Caribou Building. I went and looked at it. I carried it from the river to Steve Carey's car, from there I went off of Farmer's Loop and hid it. I left it there.

With the assistance and cooperation of Campbell and the juvenile suspects, the items were recovered and delivered to Strickfaden that same day (May 15).

Detective Strickfaden further testified that, during the period between Campbell's alleged discovery of the goods on the 14th and his own conversation with Campbell on the morning of the 15th of May (about 10:00 a. m.), the defendant had neither contacted the police concerning the goods, nor, to the best of his knowledge, had the defendant attempted to advertise the fact of his discovery in a newspaper. Thus, Mr. Pitney's property was recovered primarily as a result of Strickfaden's contacts with Campbell and the juveniles. Although Campbell subsequently cooperated with the police, neither he nor his friends in any way initiated those contacts.

[2]. AS 11.20.260 provides:

A person who finds lost property and appropriates it to his own use or to the use of another person not entitled to it, without (1) immediately or within a reasonable time advertising that fact in a paper of general circulation published nearest the place where found, and setting out a full and true description of the property, with marks of identification, if any, or (2) notifying the peace officer nearest to the place where found and giving a full and true description of the property, together with the time, place and circumstances under which found, is guilty of larceny and is punishable as provided in § 140 of this chapter. The finder of the property may retain it until reimbursed for the cost of advertising and preserving or protecting the property.

[3]. 460 P.2d 77 (Alaska 1969).

[4]. 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952).

An analysis of these two cases is essential to a determination of the constitutional issue before us.

*Morissette* involved a defendant who, while hunting on a government bombing range, came across a large number of spent bomb casings which had been used by Air Force planes during practice drops at various ground targets. Once utilized, these casings had been dumped in heaps in areas out of the way of the targets, and some had been accumulating and rusting for as long as four years. Believing that these casings had been abandoned by the government, the defendant decided to salvage the scrap metal. In broad daylight and without any attempt to conceal his activities, the defendant loaded, crushed and carted away about three tons of this material.

Morissette was subsequently indicted for violation of 18 U.S.C. § 641 which provided that anyone who "embezzles, steals, purloins, or knowingly converts" government property would be punishable by fine and imprisonment. The trial court refused to allow the defendant to present a defense based on his lack of criminal intent since, at the time of the taking, he believed that the casings had been abandoned. The trial court, in fact, charged the jury that the necessary felonious intent was "presumed by his own act".

The Supreme Court, in reversing the conviction, discussed the historical background of the requirement of wrongful intent for a finding of criminal culpability. The court stated:

> The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil.

> Crime, as a compound concept, generally constituted only from concurrence of an evil-meaning mind with an evil-doing hand, was congenial to an intense individualism and took deep and early root in American soil. As the states codified the common law of crimes, even if their enactments were silent on the subject, their courts assumed that the omission did not signify disapproval of the principle but merely recognized that intent was so inherent in the idea of the offense that it required no statutory affirmation. Courts, with little hesitation or division, found an implication of the requirement as to offenses that were taken over from the common law.[5]

Thus, the court held that, except in a narrow class of public welfare offenses in which strict liability would be tolerated,[6] proof of criminal intent would ordinarily be a necessary prerequisite to any criminal conviction.

*Morissette* also indicates an important corollary to this fundamental principle of

---

5. 342 U.S. at 250–52, 72 S.Ct. at 243–244, 96 L.Ed. at 293–94 (footnotes omitted).

6. The court justified exempting these regulatory offenses on the basis of the public policy which sought to prevent certain types of injury, the extent of which would be the same regardless of the intent of the violator. The court observed:

> The accused, if he does not will the violation, usually is in a position to prevent it with no more care than society might reasonably expect and no more exertion than it might reasonably exact from one who assumed his responsibilities. Also, penalties commonly are relatively small, and conviction does no grave damage to an offender's

reputation. Under such considerations, courts have turned to construing statutes and regulations which make no mention of intent as dispensing with it and holding that the guilty act alone makes out the crime. This has not, however, been without expressions of misgiving. 342 U.S. at 256, 72 S.Ct. at 246, 96 L.Ed. at 297.

*But cf.,* a recent New Mexico Court of Appeals decision upholding a strict liability child abuse statute which makes *felonies* of negligent acts as well as intentional ones. State v. Lucero, 87 N.M. 242, 531 P.2d 1215 (N.M. App.1975). Even though the statute is based on a strong public policy, it does not, strictly speaking, come within the "public welfare offenses" exception.

law; that is, wrongful intent when *omitted* from a statutory codification of a common law crime will be read into the statute as an implied requisite element. The government had argued that the Congressional silence as to the mental element of the offense described in 18 U.S.C. § 641 was indicative of its desire to do away with the intent requirement altogether. In light of the extensive body of common law relating to intent in theft offenses, the Supreme Court viewed the statutory silence differently.

> Stealing, larceny, and its variants and equivalents, were among the earliest offenses known to the law that existed before legislation; . . .. State courts of last resort, on whom fall the heaviest burden of interpreting criminal law in this country, have consistently retained the requirement of intent in larceny-type offenses.
>
> * * * * * *
>
> Congress, therefore, omitted any express prescription of criminal intent from the enactment before us in the light of an unbroken course of judicial decision in all constituent states of the Union holding intent inherent in this class of offense, even when not expressed in a statute. *Congressional silence as to mental elements in an Act merely adopting into federal statutory law a concept of crime already so well defined in common law and statutory interpretation by the states may warrant quite contrary inferences than the same silence in creating an offense new to general law, for whose definition the courts have no guidance except the Act.* (emphasis added) [7]

The court concluded that it could find "no grounds for inferring any affirmative instruction from Congress to eliminate intent from any offense with which this defendant was charged".[8]

7. 342 U.S. at 260–62, 72 S.Ct. at 248, 96 L.Ed. at 299 (footnotes omitted).

8. 342 U.S. at 273, 72 S.Ct. at 255, 96 L.Ed. at 306.

9. 460 P.2d 77 (Alaska 1969).

The problem confronted in Speidel v. State[9] was similar to the situation presented in Morissette v. United States, *supra.* There the defendant was convicted of a violation of AS 28.35.026 which provided that one who "refuses or *wilfully neglects*" (emphasis added) to return a rental automobile pursuant to the terms of the agreement was guilty of a felony. Section (b) of AS 28.35.026 stated that, as used in this statute, "wilfully neglects" meant that a person:

> omits, fails, or forbears, with a conscious purpose to injure, or without regard for the rights of the owner, or with indifference whether a wrong is done the owner or not.

The defendant argued on appeal that since the statute did not require proof of criminal intent in every case for conviction of a felony, it was invalid.

Following the decision in Morissette v. United States, we held that as a general rule, subject to the public welfare offenses exception, "conduct cannot be criminal unless it is shown that one charged with criminal conduct had an awareness or consciousness of some wrongdoing".[10] We further stated that, where statutes codifying common law felonies such as larceny-type offenses are silent as to criminal intent, it was proper for a court to find an implication of that intent.[11]

However, we observed that AS 28.35.026 was not silent as to the requirement of criminal intent.

> By defining "wilfully neglects" so specifically, the legislature has indicated that the ordinary criminal or felonious intent, as in the case of larceny (the intent to deprive the owner permanently of the property taken), is not inherent in the offense of failing to return a rented automobile. In place of inherent criminal intent the legislature has substituted something else.[12]

10. 460 P.2d at 78 (footnote omitted).

11. *Id.* at 79. *See also* Tarnef v. State, 512 P.2d 923, 928–29 (Alaska 1973).

12. 460 P.2d at 79 (footnote omitted).

Since the language of AS 28.35.026(b) pertaining to acts done "without regard for the rights of the owner, or with indifference whether a wrong is done the owner or not" encompassed mere inadvertent or negligent conduct, we held the statute to be invalid to the extent that it made a person criminally liable for a felony without requiring criminal intent.

> To make [negligent failure to return a rented automobile], without consciousness of wrongdoing or intention to inflict injury, a serious crime, and criminals of those who fall within its interdiction, is inconsistent with the general law. To convict a person of a felony for such an act, without proving criminal intent, is to deprive such person of due process of law.[13]

With this background in the substantive holdings of the leading precedents, we shall evaluate the arguments presented by the parties concerning the constitutionality of the statute being challenged in the instant case. AS 11.20.260 provides:

> A person who finds lost property and appropriates it to his own use or to the use of another person not entitled to it, without (1) immediately or within a reasonable time advertising that fact in a paper of general circulation published nearest the place where found, and setting out a full and true description of the property, with marks of identification, if any, or (2) notifying the peace officer nearest to the place where found and giving a full and true description of the property, together with the time,

place and circumstances under which found, is guilty of larceny and is punishable as provided in § 140 of this chapter. The finder of the property may retain it until reimbursed for the cost of advertising and preserving or protecting the property.

On its face then, the statute lists only three elements which together would constitute the offense of retention of lost property: (1) a person must find *lost* property, (2) appropriate it to his own use and (3) fail to take either of the prescribed steps to locate the owner. There is, obviously, no express requirement of larcenous intent. The offense is *punishable* as a misdemeanor or felony, dependent on the value of the property, pursuant to the provisions of AS 11.20.140, which otherwise codifies the common law crime of larceny.[14] Campbell argues that, since the statute contains no requirement of criminal intent and since the remaining elements of the felony described could consist of mere negligent failure to notify the police or to advertise the finding of truly lost items, the holding in *Speidel* directly controls and directs a ruling invalidating the statute. The facts of the instant case, however, are distinguishable from the facts of *Speidel*. There the statute specifically defined the state of mind necessary for conviction substituting a lesser and *unconstitutional* degree of culpability for the traditional wrongful intent. AS 11.20.260, on the contrary, is *silent* as to its intent requirement and, therefore, is closer to the statute construed by the United States Supreme Court

---

13. *Id.* at 80. The statute was not held to be invalid in its entirety. We found that the unconstitutionally overbroad language was severable by virtue of AS 01.10.030 (the general severability clause of the Alaska Statutes) which provides that, when a portion of a statute is rendered invalid, the remainder of the act should be preserved and given effect if at all possible. Even though the statute was partially saved, the conviction was reversed, since the jury's general guilty verdict may have rested in whole or in part on the constitutionally infirm portion of the statute.

14. AS 11.20.140 provides in pertinent part: A person who steals money, goods, or chattels, . . . which is the property of another, is guilty of larceny. Upon conviction, if the property stolen exceeds $100 in value, a person guilty of larceny is punishable by imprisonment in the penitentiary for not less than one nor more than 10 years. If the property stolen does not exceed $100 in value, the person, upon conviction, is punishable by imprisonment in a jail for not less than one month nor more than one year, or by a fine of not less than $25 nor more than $100.

in *Morissette* where the Court found the implication of intent inherent in the common law offense.

 But, according to the principles of interpretation announced in *Morissette* and *Speidel,* intent can be found by implication only in statutes which represent codifications of a common law crime. The crucial question thus becomes whether the crime described in AS 11.20.260 is sufficiently related to the common law crime of misappropriation of lost property to justify the implication of intent.

 For a person to be guilty of the common law offense of misappropriation of lost property, two elements must coexist at the time the finder discovers the lost property. The finder must intend to convert the property absolutely to his own use. Secondly, the circumstances surrounding the finding must afford some reasonable clues for determining the identity of the rightful owner.[15] In the absence of the coincidental existence of these two elements at the time of the finding, there is no larceny.[16]

From the above analysis, it is clear that, in at least two respects, other than the absence of an express requirement of criminal intent, the present form of AS 11.20.-260 departs from the common law. First, since it does not require that there be any "means of inquiry" or "clues" as to ownership of the lost items, the statute does away with what was considered an essential ingredient of the felony. Secondly, the statute purports to impose a duty upon the finder to seek out the true owner by means of either of two specifically described methods.

The state in its defense of the statute makes two essentially inconsistent arguments concerning the proper interpretation of AS 11.20.260. First, it claims that the statute impliedly contains both the element of criminal intent and the clues as to ownership requirement and that it modifies the common law only to the extent that it *adds* the duty to notify or advertise.[17] This is an attempt by the state to bring the statute within the provisions of the implication doctrine announced in *Speidel.* The state would have this court imply the clues of ownership requirement which is necessary to bring the statute into conformity with common law larceny of lost goods (except for the additional affirmative duties imposed). Once this was accomplished, the court could then *simultaneously* imply the element of wrongful intent in accordance with *Speidel,* since the statute is silent with respect to that aspect of the offense.

 This court is admittedly under a duty to reconcile, whenever possible, challenged legislation with the constitution by rendering a construction that would harmonize the statutory language with specific constitutional provisions.[18] However, in

---

15. In 2 R. Anderson, Wharton's Criminal Law and Procedures § 459 at 95 (1957), it is stated:

> The finder of lost articles is not guilty of larceny, whatever his intent at the time and although he appropriates them to his own use, when at the time of finding them he does not know who the owner is and has no immediate means of ascertaining the fact or reasonable cause to believe the owner may be found, as when there are no marks upon the goods or other circumstances by which the owner may be discovered. (footnote omitted).

16. People v. Betts, 367 Ill. 499, 11 N.E.2d 942 (1937); Calhoun v. State, 191 Miss. 82, 2 So.2d 802, 804 (1941); State v. Hinton, 56 Or. 428, 109 P. 24 (1910); State v. Belt, 125 S.C. 473, 119 S.E. 576 (1923).

17. The state asserts that the Alaska statute "leaves unstated the common law *mens rea* requirement for larceny of lost property (clue as to ownership, plus intent to deprive the owner of it permanently at the time of finding), while at the same time adding a requirement of taking prompt action to discover the true owner, by one of the two enumerated methods."

18. We have frequently noted the responsibility to "reasonably construe" statutes to avoid the danger or unconstitutionality. State v. Martin, 532 P.2d 316, 321 (Alaska 1975); Stock v. State, 526 P.2d 3, 11 (Alaska 1974); Hoffman v. State, 404 P.2d 644, 646 (Alaska 1965); Territory of Alaska v. Craig Enterprises, Inc., 355 P.2d 397, 403 (Alaska 1960). In State v. Martin, we construed a portion of a disorderly conduct statute so as to avoid

fulfilling that duty, the extent to which the express language of the provision can be altered and departed from and the extent to which the infirmities can be rectified by the use of implied terms is limited by the constitutionally decreed separation of powers which prohibits this court from enacting legislation or redrafting defective statutes.[19] We cannot "bootstrap" the wrongful intent requirement into the statute by the wholesale implication of other necessary elements. At some point, it must be assumed that the legislature means what it says and that, in fact, in this instance, it was trying to delineate a new statutory offense. There is nothing, of course, inherently unconstitutional about purposeful omission of the "clues" requirement.[20] However, once that is done, this court loses its common law reference point necessary for implication of wrongful intent.

Secondly, the state contends that the statute "modifies" the common law requirement of an "immediate" clue as to ownership by requiring that the finder pursue one of the two enumerated methods of locating the owner "regardless of whether there is an 'immediate' clue".[21] Really,

what the state would have us do is to abolish the *implied* "clues" of ownership requirement altogether. Yet, it is the inadequacy of the statute which lends itself to this sort of inconsistent argument—allowing the state to contend at one point that the clues requirement should be implied, and at another that it has been superseded. There is, in fact, a fundamental uncertainty as to just what comprises the offense. This confusion can only result in unfairness to defendants and hamper the preparation of the defense.

The state contends that both of these arguments (that the challenged statute is a mere modification of the common law rule) are strengthened by reference to the analogous California statute. The California Penal Code § 485 reads:

> One who finds lost property under circumstances which give him knowledge of or means of inquiry as to the true owner, and who appropriates such property to his own use, or to the use of another person not entitled thereto, without first making reasonable and just efforts to find the owner and to restore the property to him, is guilty of theft.

danger of unconstitutionality by equating "refusal" to obey a lawful order of the police to disperse with "wilful failure". We further specified the permissible meaning of the term "lawful order". In that case, we were construing specific terms of the statute not writing in entirely new provisions. Moreover, as far as intent is concerned, the term "refuse" is often defined as "wilful failure" to act [Black's Law Dictionary, 4th ed., 1447; Maestas v. American Metal Co., 37 N.M. 203, 20 P.2d 924, 925 (1933); Taylor v. Mason, 22 U.S. (9 Wheat.) 325, 344, 6 L.Ed. 101, 106 (1824)] so that the statute under consideration in *Martin* could properly be construed as embodying intent, unlike AS 11.20.260. *Martin* can also be distinguished from the instant case on the ground that in *Martin*, "intent" or "wilfulness" was not being implied to save the statute from a constitutional challenge based on the due process clause (which probably would have failed since *Morissette-Speidel* usually requires the implication of criminal intent only in the case of felonies not misdemeanors which may be based on strict liability). Instead, in *Martin*, the statute was being narrowly construed

in order to save it from a first amendment challenge. The majority opinion in *Martin* (at 322) states:

> Where a first amendment right such as freedom of speech is involved, a heavy burden is placed on the state to show [that the speech is unprotected and that it substantially interferes with a significant state interest].

Thus in *Martin*, the court was responding to an entirely different set of constitutional constraints and doctrines than we are dealing with here.

19. Alaska Const., art. II, § 1 inverts the legislative power of the state in the legislature while art. IV, § 1 vests the judicial power in the supreme court, superior court and the courts established by the legislature.

20. *See generally* Rev.Code of Washington 9.54.010 which does not require clues but does expressly include criminal intent.

21. Although the state purports to emphasize the word "immediate", as noted above, there was no other type of clue known to common law.

It should be immediately apparent that the California statute expressly requires that there be some "means of inquiry" as to the owner. Since that section is silent as to the requisite *mens rea* but otherwise consistent with the common law, larcenous intent can readily be implied.[22]

The Oregon statute, while similar to California's, is more instructive for purposes of the instant case. Oregon Revised Statutes 164.065 provides:

> A person who comes into control of property of another that he knows or has good reason to know to have been lost, mislaid or delivered under a mistake as to the nature or amount of the property or the identity of the recipient, commits theft if, *with intent to deprive the owner thereof*, he fails to take reasonable measures to restore the property to the owner. (emphasis added).

This statute is similar to AS 11.20.260 in that the clues as to ownership requirement has been deleted. However, in conjunction with that departure from the common law, the Oregon legislature apparently found it necessary to define specifically the element of wrongful intent required for conviction under the statute.

This concurrence of the elimination of the need for clues and the express inclusion of the larcenous intent can also be found in the present New York statute covering larceny of lost property.[23] Furthermore, § 223.5 of the Model Penal Code also reflects this pattern of variation from the common law combined with the express requirement of wrongful intent.[24]

Thus, the statutes of Oregon and New York as well as the Model Penal Code demonstrate a uniform sensitivity on the part of legislatures and criminal law scholars to the critical importance of incorporating the requisite criminal intent into newly created statutory offenses. The comparison of the Alaska statute to these others, however, is not dispositive of the issue before the court concerning the pro-

---

22. A survey, although not exhaustive, of like statutes from other jurisdictions which have enacted separate statutes specifically dealing with the felonious misappropriation of lost property indicates that the California-type statute has been widely used. Idaho (IC 18–4602), Oklahoma (Snyder's Compiled Laws of Oklahoma § 2592), and North Dakota (N.D. Century Code Anno. 12–40–09) have statutes identical to the California section except that the crime is referred to as larceny instead of theft. The relevant statutes in Montana (R.C.M. 94–2709), South Dakota (S.D.Comp.Laws Anno. 22–37–11), Indiana (IC 35–17–5–5) (expressly requires larcenous intent) and Arizona (A.R.S. 13–661) (expressly includes the intent requirement) are also quite similar to the California law.

23. New York Penal Law, McKinney's Consol. Laws, c. 40, § 155.05(2) presently reads:
Larceny includes a wrongful taking, obtaining or withholding of another's property, *with the intent prescribed in subdivision one of this section*, committed in any of the following ways.
. . . . .
(b) By acquiring lost property. A person acquires lost property when he exercises control over property of another which he knows to have been lost or mislaid, or to

have been delivered under a mistake as to the identity of the recipient or the nature or the amount of the property, without taking reasonable measures to return such property to the owner;
Subdivision (1) requires an "intent to deprive another of property or to appropriate the same to himself or to a third person."

24. Model Penal Code, Proposed Official Draft, § 223.5 (1962), provides:
A person who comes into control of property of another that he knows to have been lost, mislaid, or delivered under a mistake as to the nature or amount of the property or the identity of the recipient is guilty of theft if, with purpose to deprive the owner thereof, he fails to take reasonable measures to restore the property to a person entitled to have it.
For commentary to this section, one is referred to the comment to its predecessor, § 206.5, Model Penal Code, Tentative Draft No. 2 at 82–85 (1954), which forthrightly acknowledges that it largely ignores the common law doctrines. Kentucky (KRS 514.-050), Kansas (KSA 21–3703) and Utah (U.C.A. 76–6–407) also have statutes similar to the Code's version. *But cf.* Georgia's provision (Code of Georgia 26–1805) which does not require clues as to ownership and which does not expressly require criminal intent.

priety of implicating wrongful intent into the provision. While research has not revealed any other statute similar to Alaska's,[25] its uniqueness alone cannot be a basis for condemning it. However, the juxtaposition of the relevant statutes certainly provides evidence that our statute demands either invalidation or radical reconstruction. Such reconstruction could either be along the lines of the Oregon statute (specify the element of wrongful intent) or in the direction of the California statute (set forth the clues requirement and imply intent). It is the existence of this very option which demonstrates the *legislative* nature of the decision.[26]

We conclude that AS 11.20.260 fails to set forth the requirements of the common law crime of larceny by appropriation of lost property.[27] Instead, a new, distinct offense has been created, and the statute is constitutionally defective and invalid because of its omission of the requirement of criminal intent. We affirm the trial court's dismissal of the action.[28]

Affirmed.

25. *But cf.* Code of Georgia 26–1805 which most closely resembles the challenged Alaska statute.

26. Moreover, we are inclined to require a high degree of exactitude in and strict construction of any statute (even the classic common law variety) which purports to make it a felony wrongfully to retain lost objects. That is because there is a lesser degree of culpability which logically attaches to one who merely submits to the temptation presented by his discovery of lost goods and commits a crime of omission (failing to return the items found) than there would be to one who affirmatively acts to deprive another of his property. There is the added consideration that the owner is usually partially responsible for circumstances giving rise to that temptation either by negligently losing the property or, by his indifference, creating the impression that the items have been abandoned. While a victim's negligence is admittedly not a defense to commission of a crime, it does reflect on the nature of the fault or wrong committed by the defendant.

Some jurisdictions have explicitly recognized this suggested distinction between standard larceny-theft offenses and the mere retention of lost goods. For example, the 1962 version of the analogous Illinois statute provided only for a fine not to exceed $500 or double the value of the property taken, whichever was greater, for anyone convicted of theft of lost or mislaid property. Pursuant to that statute, the state was still required to prove that there were reasonable means of identifying the owner, that he intended to permanently deprive the owner of the use thereof and that he had failed to take reasonable steps to restore the property to the owner. Thus, even though the statute provided only for a monetary penalty for such conduct, it was far from a strict liability offense. In 1973, the Illinois statute was amended to provide that theft of lost or mislaid property would be deemed a petty offense. Ill.Ann.Statutes, Penal Code Ch. 38, § 16–2 (1973). *See also* Kansas Statute Anno. 21–3703.

Michigan had a statute quite similar to AS 11.20.260 requiring either police notification or advertisement of lost property. *See* Michigan Compiled Laws, § 7446, 7450 (1915) (repealed). This statute has since been repealed and presently the only applicable statute provides that a finder of lost property who wilfully and with fraudulent intent fails to advertise or post notice of his discovery within 30 days is deemed guilty of a misdemeanor. Michigan Compiled Laws Anno., § 434.12.

27. The common law crime of larceny is codified in AS 11.20.140 set forth in Footnote 14 of this opinion. Many states have only such general larceny or theft statutes in their penal codes, and these states have sometimes prosecuted finders who have committed common law larceny pursuant thereto. *See,* e. g., Alabama Statutes 14–331, Code of Virginia § 18.1–100, Colorado Rev.Statutes 18–4–401, Vermont Statutes Anno. 13–2501, Maine Rev.Statutes Anno. 17–2101, Mass.General Law Anno. 266–30, General Statutes of North Carolina 14–70 and Miss.Code Anno. 97–17–41. *See also* Calhoun v. State, 191 Miss. 82, 2 So.2d 802, 804 (1941).

28. In view of our holding, we do not reach the contention that in the event the requirement of larcenous intent could be implied, the statute improperly attempts to create a presumption of this wrongful intent based on the possession of lost goods and the failure to take either of the actions prescribed by statute "immediately or within a reasonable time". *See* Morissette v. United States, 342 U.S. at 275, 72 S.Ct. at 255, 96 L.Ed. at 306–07; People v. Harmon, 217 Mich. 11, 185 N.W. 679, 681 (1921).