**Ralph ANNISKETTE, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. 1231.

Supreme Court of Alaska.

Oct. 15, 1971.

Victor D. Carlson, Public Defender, Anchorage, Michael L. Rubinstein, Ketchikan, and R. Collin Middleton, Asst. Public Defenders, Ketchikan, for appellant.

G. Kent Edwards, Attorney General, Juneau; and W. H. Hawley, District Attorney, Ketchikan, for appellee.

Before BONEY, C. J., and DIMOND, RABINOWITZ, CONNOR and ERWIN, JJ.

## OPINION

CONNOR, Justice.

Appellant was convicted by a district court jury of disorderly conduct and disturbance of the peace under AS 11.45.030. The complaint stated that on or about August 22, 1969, Ralph Anniskette "did un-

lawfully conduct himself in a disorderly manner in his home to the disturbance of an Alaska State Trooper, Lorn Campbell, by telephoning Trooper Campbell and berating him with loud and abusive language."

It seems that appellant regularly telephoned the local resident trooper and complained at length regarding the trooper's qualifications and performance. Repeated calls were often made late at night while appellant was apparently intoxicated. The trooper and his family became increasingly upset with such recurrent harassment, which occurred even while the trooper was out of town.

However, appellant was charged with making but a single telephone call on August 22, 1969. The call was from appellant's home to Trooper Campbell's home. During the course of that conversation, he complained at length regarding the trooper's effectiveness, and even questioned whether the trooper was properly qualified to be a law-enforcement official.[1]

At his trial, appellant moved to dismiss the charge for failure to state an offense under AS 11.45.030. If an offense was stated, it was, he argued, an unconstitutional application of the statute. Alternatively, he asserted that the statute was unconstitutionally vague on its face, and that it constituted an invalid prior restraint on his freedom of speech. His motion was denied. He was convicted in the district court and appealed to the superior court. Upon affirmance of his conviction by that court, this appeal followed.

At the relevant time AS 11.45.030(1) and (2) provided:

*"Disorderly conduct and disturbance of the peace.* A person who (1) uses obscene or profane language in a public place or private house or place to the disturbance or annoyance of another; (2) makes a loud noise or is guilty of tumultuous conduct in a public place or private house to the disturbance or annoyance of another, or is otherwise guilty of disorderly conduct to the disturbance or annoyance of another, upon conviction, is guilty of a misdemeanor, and is punishable by a fine of not more than $300, or by imprisonment in a jail for not more than six months, or by both."[2]

This is not a case in which a comprehensive interpretation of the disorderly conduct statute is required. Whatever the statute means, it cannot be applied to behavior which is constitutionally exempt from criminal prohibition. It must be recognized at the outset that it is communicative utterances which are the subject of prosecution. They constitute the sole form of behavior for which the defendant was prosecuted.

Under the First Amendment to the Constitution,[3] it is only in the most limited circumstances that speech may be punished. Certainly the defendant's conduct does not fall within the unprotected area of "obscenity". No claim is made that Anniskette's message was erotically arousing. See Cohen v. California, 403 U.S. 15, 91

---

1. The trooper testified that:
 "Mr. Anniskette—he told me I was a no good goddam cop and that he had a call into Juneau right now to find out if I was a State trooper and that when they had their own policeman that they never had the problems that since I'd been over there that they have with their kids drinking, that what was I gonna' do about a subject named Ernie Fawcett (phonetic) who had stabbed a Marvin Milton (phonetic), that he was still running on the street and that if he got to checking that he'll bet that I didn't even report this and make a report concerning this, and he went on and on over the same type of things."

2. AS 11.45.030 was subsequently amended by deleting subsections (3) and (4) not set forth above.

3. The First Amendment, United States Constitution, provides in part:
 "Congress shall make no law * * * abridging the freedom of speech * * *."
 The parallel provision in the Alaska Constitution is in Article I, Section 5:
 "Every person may freely speak, write, and publish on all subjects, being responsible for the abuse of that right."

S.Ct. 1780, 29 L.Ed.2d 284 (1971). The defendant did not use "profanity" of the type which creates in and of itself a public nuisance. At least no such "profanity" is charged here.[4] Writing for the court in *Cohen*, Mr. Justice Harlan pointed out that coarse words must often be a necessary concomitant to achieving those values which open debate and free speech are designed to serve:

"Against this perception of the constitutional policies involved, we discern certain more particularized considerations that peculiarly call for reversal of this conviction. First, the principle contended for by the State seems inherently boundless. How is one to distinguish this from any other offensive word? Surely the State has no right to cleanse public debate to the point where it is grammatically palatable to the most squeamish among us. Yet no readily ascertainable general principle exists for stopping short of that result were we to affirm the judgment below. For, while the particular four-letter word being litigated here is perhaps more distasteful than most others of its genre, it is nevertheless often true that one man's vulgarity is another's lyric. Indeed, we think it is largely because governmental officials cannot make principled distinctions in this area that the Constitution leaves matters of taste and style so largely to the individual." 403 U.S. 15, at 25, 91 S.Ct., at 1788, 29 L.Ed.2d, at 294. See also Williams v. District of Columbia, 136 U.S.App.D.C. 56, 419 F.2d 638 (1969).

■ Nor can we find in defendant's telephone call an exhortation to violence by others which creates a clear and present danger that such violence will occur. *Cf.*, Terminiello v. Chicago, 337 U.S. 1 (1949), 69 S.Ct. 894, 93 L.Ed. 1131.

■ We cannot classify the defendant's telephonic communication as falling within the category of "fighting words", which is recognized as another exception to the freedom of speech guaranteed by the Constitution. The "fighting words" doctrine covers those face-to-face utterances which ordinarily provoke, in the average, reasonable listener, an immediate violent response. The defendant's conduct in this case did not reach that degree of provocation.

Chaplinsky v. New Hampshire, 315 U.S. 568 (1942), 62 S.Ct. 766, 86 L.Ed. 1031, is not apposite. It concerns a narrowly construed statute prohibiting "face-to-face words plainly likely to cause a breach of the peace by the addressee". 315 U.S., at 573, 62 S.Ct., at 770, 86 L.Ed., at 1036. An important distinguishing feature of *Chaplinsky* is that the words, "You are a God damned racketeer" and "a damned Fascist and the whole government of Rochester are Fascists or agents of Fascists", were uttered at a street intersection where the listening crowd had become unruly, and after a disturbance in the crowd had actually occurred. 315 U.S. 568, 569, 62 S. Ct. 768, 86 L.Ed. 1031, 1034. Because these words, in context, tended to incite an immediate breach of the peace, they were held not to be protected as free speech.

But here the situation is quite different. For even if it were assumed for purposes of argument that Anniskette's message contained "fighting words", constitutional protection would still extend to the particular factual setting presented here. The time necessary for the officer to travel

---

4. The expletive, "no good goddamn cop", merely as a part of a more generalized conversation, would hardly rise to the level of profanity which can constitutionally be reached by the criminal law. In Baines v. City of Birmingham, 403 U.S. 927, 91 S.Ct. 2246, 29 L.Ed.2d 706 (1971), the Supreme Court vacated and remanded the decision of the Alabama court in Baines v. City of Birmingham, 240 So. 2d 689 (Ala.Cr.App.1970) for reconsideration in the light of Cohen v. California, 403 U.S. 15, 91 S.Ct. 1780, 29 L. Ed.2d 284 (1971). In *Baines* the Alabama court held "God damn" to be criminal profanity. But in *Cohen* the United States Supreme Court held that the words "Fuck the Draft", worn on the jacket of a defendant who walked through the Los Angeles courthouse, were protected speech.

from his residence to that of the defendant should have allowed enough cooling off so that any desire on the part of the officer to inflict violence on the defendant should have been dissipated. We assume that the officer had sufficient self-control that, after such a period of time, he would not have assaulted the defendant for what had been said earlier. As another court has observed,

> "A policeman's special powers and training, and his constant exposure to situations where the norms of common speech are not distinguished by unvarying delicacy of expression, leave him less free to react as quickly as the private citizen to a purely verbal assault. In a situation where he is both the victim of the provocative words of abuse and the public official entrusted with a discretion to initiate through arrest the criminal process, the policemen may, ordinarily at least, be under a necessity to preface arrest by a warning. It would appear that there is no First Amendment right to engage in deliberate and continued baiting of policemen by verbal excesses which have no apparent purpose other than to provoke a violent reaction." Williams v. District of Columbia, 136 U.S.App.D.C. 56, 419 F.2d 638, 646, note 23 (1969).[5]

■ That the officer was personally offended by the telephone call does not render the defendant's conduct a crime. That would be to make the terms of the statute and the content of the First Amendment shift with the mentation and emotional status of the recipient of the verbal communication. Under an *objective standard* it is not permissible to make criminality hinge upon the ideological vicissitudes of the listener. A great deal more is required to place speech outside the pale of First Amendment protection. The point was made forcefully in Terminiello v. Chicago,

337 U.S. 1, 4 (1949), 69 S.Ct. 894, 896, 93 L.Ed. 1131, 1134:

> "Speech is often provocative and challenging. It may strike at prejudices and preconceptions and have profound unsettling effects as it presses for acceptance of an idea. That is why freedom of speech, though not absolute, (citing *Chaplinsky*) is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest."

The court had noted earlier in Bridges v. California, 314 U.S. 252, 263 (1941), 62 S. Ct. 190, 194, 86 L.Ed. 192, 203:

> "What finally emerges from the 'clear and present danger' cases is a working principle that the substantive evil must be extremely serious and the degree of imminence extremely high before utterances can be punished."

Although appellant admittedly engaged in a series of critical telephone calls, the conduct for which he was convicted comprised only one such call. It is immaterial whether he had engaged in a continuing course of conduct, as he was charged with making only a single telephone call.

■ We understand the difficulties encountered by a state trooper in a small community, where village vexations at times can reach a fever pitch. We may even view appellant's conduct with personal disapproval. But we find neither legislative language nor constitutional power to read the statute as including within its ambit a single telephone call criticizing a public officer for the performance of his official duties. *See* Garrison v. Louisiana, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964). *See also* Thompson v. City of Louisville, 362 U.S. 199, 205–206, 80 S.Ct. 624, 4 L.Ed.2d 654, 659 (1960).

---

5. The American Law Institute has also noted:

> "Insofar as the theory of disorderly conduct rests on the tendency of the actor's behavior to provoke violence in others, one must suppose that policemen, employed and trained to maintain order, would be least likely to be provoked to disorderly responses." Model Penal Code § 250.1, Comment at p. 14 (Tent.Draft No. 13, 1961).

 In the light of these constitutional mandates we cannot apply the disorderly conduct statute to the facts of this case. We hold that defendant's conduct did not constitute a crime.[6]

We reverse and remand with direction that the complaint be dismissed.

Reversed.

6. Numerous jurisdictions have carefully drafted legislation specifically prohibiting such behavior. *See* 97 A.L.R.2d 503, 505–08 (1964). Alaska itself has two other statutes creating certain offenses concerning use of the telephone. AS 11.-45.035 (prohibiting vexatious anonymous telephone calls), and AS 42.20.030(5) (prohibiting wilful and malicious interference with telephone lines and messages). There is no statute in this state prohibiting the obstruction of a peace officer in the performance of his duties unless he is making an arrest. AS 11.30.-210. We note that prosecution in this case was attempted under none of these statutes.

A carefully drawn statute might, of course, prohibit various types of "conduct", in which the telephone is an instrumentality, so long as it did not punish or impose a prior restraint upon "speech" as a communicative utterance.