**Joe Willie POOLE, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 2104.**

Supreme Court of Alaska.

July 15, 1974.

Herbert D. Soll, Public Defender, Ben Esch, Asst. Public Defender, Anchorage, for appellant.

No appearance for appellee.

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER and FITZGERALD, JJ.

Opinion

RABINOWITZ, Chief Justice.

Appellant Joe Poole appeals the superior court's affirmance of his conviction of disorderly conduct after trial by jury in district court.[1]

One of the prosecution's chief witnesses testified that a "great many things happen in the bottom of the S & S Apartments." The truth of this statement is reflected in the factual circumstances of the case at bar which find their origin in an occurrence in the basement of the S & S Apartment complex located in Anchorage. In the early evening hours of January 8, 1972, Roy Smerdon, a private security guard, was patrolling the S & S Apartment complex in the company of a security trainee, Stanley Sagerson. Alerted by noise and the sight of what appeared to be a pool of urine on the basement floor, Smerdon and Sagerson discovered Poole lying on the floor of an unlocked locker in close proximity to a partially undressed female. As a proximate result of this discovery, a complaint was filed against Poole charging him with disorderly conduct in violation of former AS 11.45.030.[2] This statute provides:

A person who (1) uses obscene or profane language in a public place or private house or place *to the disturbance or annoyance of another*; or (2) makes a loud noise or is guilty of tumultuous conduct in a public place or private house *to the disturbance or annoyance of another, or is otherwise guilty of disorderly conduct to the disturbance or annoyance of another*, upon conviction, is guilty of a misdemeanor, and is punishable by a fine of not more than $300, or by imprisonment in a jail for not more than six months, or by both. (emphasis added)

The complaint filed pursuant to this disorderly conduct statute charged that Poole did "wilfully and unlawfully conduct himself in a disorderly manner to the annoyance of Roy Smerdon by urination on the floor and conducting himself in a tumultuous manner, at S & S Apartments, Building 9, Anchorage, Alaska."[3] Review of the prosecution's evidence produced at the district court jury trial reveals that Poole was arrested on charges of disorderly conduct and trespassing after he failed to immediately respond to the inquiries of Smerdon and delayed in leaving the locker area.[4] Both Smerdon and Sagerson admitted that Poole did not give them any trouble, that Poole neither cursed, fought, shouted, abused, nor addressed them in a loud, boisterous, or tumultuous manner.[5] Of particular significance is the fact that neither Smerdon nor Sagerson testified that they were annoyed by anything they observed or by any aspect of Poole's conduct.

After the prosecution rested its case in chief, Poole's counsel moved unsuccessfully for a judgment of acquittal, declined to

---

1. Poole was sentenced by the district court to serve five days in jail.

2. This statute was re-written and substantially changed by the legislature in 1973 (am § 1 ch 63 SLA 1973).

3. The complaint also contained the following statements:

    This complaint is based on the statement of Roy Smerdon who observed the defendant laying with another person in the lockers of the building and the area of the floor where the defendant had urinated. At the time of his observation the defendant had the blouse of the other person open and was attempting to remove her rousers.

4. No reason appears in the record furnished this court why the trespass charge against Poole was dismissed.

5. As to the latter, Sagerson testified that he would not characterize Poole's conduct as tumultuous.

offer any evidence, and after the return of the jury's guilty verdict moved for judgment n. o. v.[6] Poole's contention that his conduct was not proscribed by the language of AS 11.45.030 was rejected by the district court in part on the rationale that

> disorderly conduct and disturbance of the peace is an ancient criminal offense and although the drafting is not the best, I feel that, '. . . or is otherwise guilty of disorderly conduct . . . .' would not be limited to either obscene or profane language or loud noise or tumultuous conduct. In fact I have some question whether this type of—the evidence brought forth here could not fall in the category of tumultuous conduct if the fact finder was convinced the evidence was sufficient.

Being dissatisfied with the result obtained in the district court, Poole then appealed to the superior court. In that appeal, Poole asserted AS 11.45.030 was unconstitutionally vague, that his actions did not reasonably fall within the proscriptions of AS 11.45.030, and that no evidence of an essential element of the offense of disorderly conduct, namely, proof of annoyance of another person, was presented by the prosecution. The superior court affirmed the judgment and commitment of the district court and this appeal followed.[7]

In his brief to this court, Poole has narrowed the focus of his appeal to an attack upon the constitutionality of AS 11.45.030 on the grounds of vagueness and overbreadth.[8] Despite serious reservations we entertain as to the sufficiency of the evidence adduced by the prosecution and the legal adequacy of the district court's instructions to the jury, we limit our discussion to resolution of the constitutional issue raised by Poole in the instant appeal.

In Marks v. City of Anchorage [9] we held the city's disorderly conduct ordinance unconstitutional on the grounds of vagueness and overbreadth in violation of the respective due process of law guarantees found in the United States and Alaska Constitutions.[10] We believe that *Marks* is dispositive of the constitutional issue raised in this appeal.[11]

The touchstone which invokes the prohibitions of AS 11.45.030 is language or conduct which annoys or disturbs another. As we noted in *Marks,* the Supreme Court of the United States in its decision in Coates v. Cincinnati, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971), specifically declared the word "annoying" to be unconstition-

---

6. In its instructions to the jury, the district court set forth the provisions of AS 11.45.-030 and the text of the complaint. No attempt was made in the court's instructions to define the pertinent terms employed in AS 11.45.030 nor inform the jury as to the essential elements of the offense which they must find to have been proven beyond a reasonable doubt before they could return a guilty verdict. Poole's counsel did not object to the instructions.

7. In its order affirming the judgment of the district court, the superior court said in part:
   After reviewing the file on this matter and the proceedings in the trial court regarding the same, this Court deems itself fully advised in the premises, and finds no reversible error.

8. No brief has been filed in this appeal on behalf of the State of Alaska.

9. 500 P.2d 644 (Alaska 1972).

10. United States Const., amend., XIV, § 1, provides in part: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law . . . ."
   Alaska Const., art., I, § 7 provides: "No person shall be deprived of life, liberty, or property without due process of law."

11. Upon application for rehearing in *Marks,* it was argued that the Supreme Court of the United States in Colten v. Kentucky, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972), had upheld a statute which was similar to Anchorage's disorderly conduct ordinance. This court declined to change its decision, being of the view that *Colten* was outside the mainstream of recent decisions of the United States Supreme Court in this area of law. We note that the Supreme Court of the United States in its decisions since then has not relied on *Colten,* but has since declared ordinances unconstitutional which were not limited in application to punish only unprotected speech. Lewis v. New Orleans, 415 U.S. 130, 94 S.Ct. 970, 39 L.Ed. 2d 214 (1974); Plummer v. City of Columbus, 414 U.S. 2, 94 S.Ct. 17, 38 L.Ed.2d 3 (1973).

ally vague.[12]   Since conduct which disturbs or annoys one person might not annoy another, "men of common intelligence must necessarily guess at its [the ordinance's] meaning." [13]   Of particular significance is that portion of our opinion in *Marks* where we said:

> Since the prefatory language of the ordinance, containing the mens rea for the specifically enumerated prohibited acts, is itself impermissibly vague, no part of the ordinance can stand.   The defective prefatory language is 'with purpose and intent to cause public *inconvenience, annoyance* or *alarm* or recklessly create a risk thereof.' (emphasis added).   Coates v. Cincinnati, *supra,* specifically declared the word 'annoying' to be unconstitutionally vague and the words 'inconvenience' and 'alarm' are no less so.   The rest of the ordinance is also peppered with indefinite words—'threatening' 'tumultuous behavior', 'unreasonable noise',

'offensively coarse', and 'abusive language'.   The phrase 'tumultuous behavior', for example, might encompass conduct ranging from actual violence to speaking in a loud and excited manner; depending on the arresting officer's temperament, everything from the most provocative insult to the mildest obscenity might be termed 'abusive language'.[14]

We adhere to *Marks* and hold that AS 11.45.030 is void for vagueness because the conduct and speech sought to be prohibited are determined by the impermissibly vague standards of "annoyance" and "disturbance" to another.   Thus, we conclude that the case should be remanded to the superior court with directions to remand to the district court with further directions to reverse and set aside Poole's conviction of disorderly conduct on the ground that AS 11.45.030, in its entirety, is void for vagueness.[15]

Reversed.

12. The Cincinnati, Ohio, ordinance there in question made it a criminal offense for "three or more persons to assemble .   .   . on any of the sidewalks .   .   . and there conduct themselves in a manner annoying to persons passing by.   .   .   ." 402 U.S. at 611, n. 1, 91 S.Ct. at 1687, n. 1, 29 L.Ed. 2d at 216, n. 1.

13. Coates v. Cincinnati, 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214, 217, quoting Connally v. General Const. Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322, 328 (1926).

14. Marks v. City of Anchorage, 500 P.2d 644, 652–653 (Alaska 1972) (footnotes omitted).

15. We also recognize the strong likelihood that AS 11.45.030 is overbroad in that constitutionally protected speech and conduct may fall within its prohibitions.   See cases discussed in Marks v. City of Anchorage, 500 P.2d 644, 646–650 (Alaska 1972), and Miller v. California, 413 U.S. 15, 47, 93 S.Ct. 2607, 2627, 37 L.Ed.2d 419, 445 (1973) (dissenting opinion).   There also exists the pos-

sibility that AS 11.45.030 is subject to uneven enforcement due to the lack of sufficiently definite standards controlling the use of discretion by enforcement officials.   Papachristou v. City of Jacksonville, 405 U.S. 156, 170, 92 S.Ct. 839, 847, 31 L.Ed.2d 110, 120 (1972).

Recently the Supreme Court of the United States refused to find a statute unconstitutional on the ground of overbreadth where only conduct was involved and where the statute had received a narrow interpretation. Broadrick v. Oklahoma, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973).   In the case at bar, no such narrow interpretation has been placed on the statute and no argument was made that it would be so interpreted. While we recognize that the United States Supreme Court appears to now require "substantial" facial overbreadth in cases where conduct as opposed to protected speech is involved, we leave for a more appropriate occasion determination of whether this trend will be followed in construing the constitutional protection accorded to conduct under Alaska's constitution.