**STATE of Alaska, Appellant,**

v.

**Donald L. MARTIN, Appellee.**

**No. 2143.**

Supreme Court of Alaska.

Feb. 28, 1975.

---

Norman C. Gorsuch, Atty. Gen., Daniel W. Hickey, Dist. Atty., Ivan Lawner, Asst. Dist. Atty., Juneau, for appellant.

Herbert D. Soll, Public Defender, Anchorage, David C. Backstrom, Deputy Public Defender, Fairbanks, for appellee.

## OPINION

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER and FITZGERALD, JJ.

FITZGERALD, Justice.

We decide in this case the validity of section (a)(2) of AS 11.45.030, the Alaska statute proscribing disorderly conduct.

At approximately 4:20 in the morning of June 18, 1973, Trooper Cummings of the Alaska State Police observed an automobile operated in an unusual manner in a residential area of downtown Fairbanks. According to the evidence presented by the state, the trooper stopped the vehicle driven by Specialist Holsopple and undertook to test him for intoxication. Specialist Donald Martin was a passenger in the vehicle. While the sobriety tests were being conducted, Martin got out of the car and continuously interrupted the tests to explain that both he and Holsopple were in the military, that Holsopple was under his immediate supervision, and that he did not understand why the trooper was administering these tests to Holsopple. At this point the trooper requested Martin alternatively to return to the vehicle, take a taxicab, or walk home. Martin refused and said that he wanted to accompany Holsopple to jail. Martin then began to raise his voice and to use loud and obscene language[1] towards the officer. The troop-

---

1. The officer did not testify as to the specific language used, and it was not contended by him that it constituted "fighting words" or that it created any danger of a serious substantive evil rising above public inconvenience or annoyance.

er testified that he saw two people turn on their houselights and look out their windows. Trooper Cummings then arrested Martin for disorderly conduct.

After hearing the evidence, the district court judge refused to rule on Martin's guilt and dismissed the complaint on the grounds that the section of the disorderly conduct statute under which Martin was charged was unconstitutional on its face. The judge ruled that the statute infringed upon the first amendment rights guaranteed by the United States Constitution, that the statute was overbroad and void for vagueness. The state appealed to the superior court which affirmed the trial court's ruling. The state now appeals from these two lower court decisions.

The statute here called into question was enacted by the 1973 Alaska Legislature which amended and substantially changed the prior AS 11.45.030. The new statute followed our decision in Marks v. City of Anchorage, 500 P.2d 644 (Alaska 1972), which struck down the disorderly conduct ordinance of the City of Anchorage. The Anchorage ordinance prohibited tumultuous behavior, unreasonable noise, offensively coarse utterances, gestures or displays, and abusive language when such activity was intended to cause or recklessly created a risk of causing public inconvenience, annoyance or alarm.[2] The language of the ordinance constituted a substantial impediment to the exercise of free speech and thus infringed upon first amendment rights. For this reason we held the ordinance to be overbroad. Moreover, we found that the ordinance failed to clearly specify the contours of the prohibited conduct and therefore was void for vagueness.[3]

*Marks* rested on a number of well-established authorities, several of which antedated our decision by several decades. In Terminiello v. City of Chicago, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131 (1949), the United States Supreme Court held unconstitutional a breach of peace ordinance as applied to an individual accused of delivering an inflammatory speech to an unruly crowd. After first noting that free discussions are essential to the vitality of our civil and political institutions, the Supreme Court stated:

> [A] function of free speech under our system of government is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger. Speech is often provocative and challenging. It may strike at prejudices and preconceptions and have profound unsettling effects as it presses for acceptance of an idea. That is why freedom of speech, though not absolute, . . . is nevertheless protected against censorship or punishment, *unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest. . . . There is no room under our Constitution for a more restrictive view. For the alternative would lead to standardization of ideas either by legislatures, courts, or dominant political or community groups.* (emphasis added and citations omitted)

*Id.* at 4–5, 69 S.Ct. at 896, 93 L.Ed. at 1134–5.

In Coates v. City of Cincinnati, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971), the United States Supreme Court in striking down a Cincinnati ordinance stated that a public assembly of three or more persons causing mere annoyance to passersby may not be prohibited:

> Our decisions establish that mere public intolerance or animosity cannot be the basis for abridgement of these constitutional freedoms. . . . The First and Fourteenth Amendments do not permit a State to make criminal the exercise of the right of assembly simply because its exercise may be "annoying" to some peo-

---

2. Marks v. City of Anchorage, 500 P.2d 644, 645 (Alaska 1972).

3. *Id.* at 650, 652–53.

ple. If this were not the rule, the right of the people to gather in public places for social or political purposes would be continually subject to summary suspension through the good-faith enforcement of a prohibition against annoying conduct. And such a prohibition, in addition, contains an obvious invitation to discriminatory enforcement against those whose association together is "annoying" because their ideas, their lifestyle, or their physical appearance is resented by the majority of their fellow citizens. (footnotes and citations omitted)

*Id.* at 615–16, 91 S.Ct. at 1689, 29 L.Ed.2d at 218.

Our own decision in Anniskette v. State, 489 P.2d 1012 (Alaska 1971), is fully in accord with the views stated by the United States Supreme Court. In *Anniskette* this court dealt with the question of whether AS 11.45.030, as it read prior to 1973,[4] was ·constitutional as applied. Anniskette was charged with disorderly conduct. The complaint alleged that Anniskette committed the offense when he telephoned a state trooper and berated him with loud and abusive language.[5] We found that the offensive behavior involved only voice communications. We said that under the first amendment to the United States Constitution, as well as under the parallel provision of the Alaska constitution, it is only in the most limited circumstances that speech alone may be punished.[6] No claim was made that Anniskette's message was erotically arousing or that he used profanity which in and of itself might create a public nuisance.[7] This court found that the telephone call did not amount to an exhortation to violence by others which created a clear and present danger that such violence would occur.[8] We also concluded that Anniskette's communication did not fall within the category of "fighting words."[9]

---

4. At the relevant time AS 11.45.030(1) and (2) provided:

   *Disorderly conduct and disturbance of the peace.* A person who (1) uses obscene or profane language in a public place or private house or place to the disturbance or annoyance of another; or (2) makes a loud noise or is guilty of tumultuous conduct in a public place or private house to the disturbance or annoyance of another, or is otherwise guilty of disorderly conduct to the disturbance or annoyance of another, upon conviction, is guilty of a misdemeanor, and is punishable by a fine of not more than $300, or by imprisonment in a jail for not more than six months, or by both.

5. 489 P.2d at 1012–13.

6. *Id.* at 1013.

7. *Id.* at 1013–14, citing Cohen v. California, 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971).

8. *Id.* at 1014, citing Terminiello v. City of Chicago, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131 (1949).

9. *Id.* at 1014–15, where we explained that:
   We · cannot classify the defendant's telephonic communication as falling within the category of "fighting words", which is recognized as another exception to the freedom of speech guaranteed by the Constitution. The "fighting words" doctrine covers those face-to-face utterances which ordinarily provoke, in the average, reasonable listener, an immediate violent response. The defendant's conduct in this case did not reach that degree of provocation.

   Chaplinsky v. New Hampshire, 315 U.S. 568 (1942), 62 S.Ct. 766, 86 L.Ed. 1031, is not apposite. It concerns a narrowly construed statute prohibiting "face-to-face words plainly likely to cause a breach of the peace by the addressee". 315 U.S., at 573, 62 S.Ct., at 770, 86 L.Ed., at 1036. An important distinguishing feature of *Chaplinsky* is that the words, "You are a God damned racketeer" and "a damned Fascist and the whole government of Rochester are Fascists or agents of Fascists", were uttered at a street intersection where the listening crowd had become unruly, and after a disturbance in the crowd had actually occurred. 315 U.S. 568, 569, 62 S.Ct. 768, 86 L.Ed. 1031, 1034. Because these words, in context, tended to incite an immediate breach of the peace, they were held not to be protected as free speech.

   But here the situation is quite different. For even if it were assumed for purposes of argument that Anniskette's message contained "fighting words", constitutional protection would still extend to the particular factual setting presented here. The time necessary for the officer to travel from his residence to that of the defendant should have allowed enough cooling off so that any desire on the part of the officer to inflict violence on the defendant should have been dissipated.

In Poole v. State, 524 P.2d 286 (Alaska 1974), this court faced the question of whether AS 11.45.030, as it stood prior to 1973, was constitutional on its face. Our decision in *Marks* foreshadowed the fate of AS 11.45.030, for by its terms this statute was substantially similar to the Anchorage ordinance which we had struck down. As we have previously noted, the legislature, possibly with the *Marks* decision in mind, rewrote and substantially changed the statute in 1973. Nevertheless, in *Poole* we held that the former statute was unconstitutional on its face. The statute delineated activity constituting disorderly conduct by using the standards of "disturbance or annoyance of another." [10]

We followed the rationale of our earlier decision in *Marks,* stating:

> We adhere to *Marks* and hold that AS 11.45.030 is void for vagueness because the conduct and speech sought to be prohibited are determined by the impermissibly vague standards of "annoyance" and "disturbance" to another. Thus, we . . . reverse and set aside Poole's conviction of disorderly conduct on the ground that AS 11.45.030, in its entirety, is void for vagueness. (footnote omitted)

524 P.2d at 289.

This brings us now to the issue of the constitutionality of AS 11.45.030(a)(2) in the case at bar. The statute as amended in 1973 provides in pertinent part:

> (a) A person who does any of the following is guilty of disorderly conduct:
>
> .  .  .  .  .  .
>
> (2) in a public place, when a criminal offense has occurred, refuses to comply with a lawful order of the police to disperse  .  .  .  .[11]

---

We assume that the officer had sufficient self-control that, after such a period of time, he would not have assaulted the defendant for what had been said earlier. As another court has observed,

"A policeman's special powers and training, and his constant exposure to situations where the norms of common speech are not distinguished by unvarying delicacy of expression, leave him less free to react as quickly as the private citizen to a purely verbal assault. In a situation where he is both the victim of the provocative words of abuse and the public official entrusted with a discretion to initiate through arrest the criminal process, the policemen may, ordinarily at least, be under a necessity to preface arrest by a warning. It would appear that there is no First Amendment right to engage in deliberate and continued baiting of policemen by verbal excesses which have no apparent purpose other than to provoke a violent reaction." Williams v. District of Columbia, 136 U.S.App.D.C. 56, 419 F.2d 638, 646, note 23 (1969). (footnote omitted)

10. At that time AS 11.45.030 provided:
A person who (1) uses obscene or profane language in a public place or private house or place *to the disturbance or annoyance of another;* or (2) makes a loud noise or is guilty of tumultuous conduct in a public place or private house *to the disturbance or annoyance of another, or is otherwise guilty of disorderly conduct to the disturbance or annoyance of another,* upon conviction, is guilty

of a misdemeanor, and is punishable by a fine of not more than $300, or by imprisonment in a jail for not more than six months, or by both. (emphasis added)

11. AS 11.45.030 in its entirety provides:
*Disorderly conduct.* (a) A person who does any of the following is guilty of disorderly conduct:
(1) in a public place, repeatedly or continuously shouts, blows a horn, plays a musical or recording or amplifying instrument, or otherwise generates loud noises intending to disturb or acting with reckless disregard for the peace and privacy of others, or, in a private place, engages in the same conduct with the same intent or reckless disregard, having been informed by another that the conduct is disturbing the peace and privacy of others not in the same place;
(2) in a public place, when a criminal offense has occurred, refuses to comply with a lawful order of the police to disperse, or, in a private place, refuses to comply with an order of the police to leave premises in which he has neither a right of occupancy nor the express invitation to remain of the person having the right of possession;
(3) in a public or private place challenges another to fight, or engages in fighting other than in self-defense; or
(4) in a public or private place knowingly or recklessly creates a hazardous condition for others by an act which has no legal justification or excuse.
(b) Upon conviction, a person who is guilty of disorderly conduct is punishable by a fine

The portion of AS 11.45.030(a)(2) in question in this case is similar in part to the Kentucky statute considered by the United States Supreme Court in Colten v. Kentucky, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972). The Kentucky statute provided:

(1) A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

. . . . . .

(f) Congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse

. . ..

*Id.* at 108, 92 S.Ct. at 1956, 32 L.Ed.2d at 589.

AS 11.45.030(a)(2) is similar to subsection (f) of the Kentucky statute, but the Alaska statute does not contain the specific terms of subsection (1) of the Kentucky statute which this court found objectionable in *Marks* and *Poole*.

In *Colten* the defendant was arrested for violation of the Kentucky disorderly conduct statute when he disobeyed repeated police orders to move on while his companion who had been driving in a separate car was receiving a traffic summons. Colten tried to intervene in the issuance of the summons to straighten out the details of his companion's offense and to make transportation arrangements because his companion's car was to be towed away.[12]

The Kentucky court of appeals construed the disorderly conduct statute under which Colten was arrested to mean that for a violation of the statute to occur the specified intent to cause public inconvenience, annoyance, or alarm must be the predominant intent as determined: (1) from the fact that no bona fide intent to exercise a constitutional right existed, or (2) from the fact that the interest advanced by the particular exercise of a constitutional right is insignificant in comparison with the public harm caused by the exercise. The United States Supreme Court upheld the validity of the statute as construed by the Kentucky appellate court as well as the application of the statute to Colten's actions.[13] For the purposes of the instant case, however, the significance of the *Colten* decision lies in the continued recognition that disorderly conduct statutes can be construed to meet constitutional requirements and that the United States Supreme Court will accept such limiting constructions placed on state statutes by state courts.[14]

■ This court has where possible consistently undertaken to reasonably construe statutes to avoid the danger of unconstitutionality. Hoffman v. State, 404 P.2d 644 (Alaska 1965); Stock v. State, 526 P.2d 3 (Alaska 1974). We were not able to do

---

of not more than $300, or by imprisonment for not more than 10 days, or by both.

(c) In a prosecution under (a)(1) of this section

(1) if the loud noise constitutes speech, the content of speech or evidence of specific words used by the defendant is admissible in evidence against him only as permitted by court rule;

(2) "loud noise" in a public place means noise which is loud enough to inhibit the ability of the average person in the same place to speak freely without leaving the public place;

(3) "loud noise" in a private place means noise which is loud enough to awaken the average person sleeping in a place other than the private place.

(d) In this section a "public place" is a place where the public is permitted to assemble, enter or pass through, whether publicly or privately maintained, including but not limited to places of accommodation, transportation, business and entertainment, or any other place which is not a private place.

12. 407 U.S. at 106–7, 92 S.Ct. 1953, 32 L.Ed.2d at 587–8.

13. *Id.* at 108–11, 92 S.Ct. 1953, 32 L.Ed.2d at 589–90.

14. Other recent United States Supreme Court cases demonstrating this principle are: Plummer v. City of Columbus, 414 U.S. 2, 94 S.Ct. 17, 38 L.Ed.2d 3 (1973); Rosenfeld v. New Jersey, 408 U.S. 901, 92 S.Ct. 2479, 33 L.Ed.2d 321 (1972) (dissent); Gooding v. Wilson, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972). A clear recognition of this doctrine of construction may be found in the leading case of Chaplinsky v. New Hampshire, 315 U.S. 568, 573, 62 S.Ct. 766, 86 L.Ed. 1031, 1036 (1942).

this in *Marks* and in *Poole*. In both of those cases no limiting construction had been presented to this court for its consideration. And in both *Marks* and *Poole* the enactments in question were so pervasively flawed that no reasonable constitutional interpretation was possible. However, this is not so with the statute now before us. We find that we are able to uphold the validity of the statute when its application is narrowly restricted.

■ AS 11.45.030(a)(2) as construed is violated when in a public place, a criminal offense has occurred, and a person wilfully fails to comply with a lawful order of the police to disperse, a lawful order being one which is given where the person's conduct or speech substantially impedes an officer in the performance of his duties in effecting an arrest, in investigating a crime, or in ensuring the public safety. Where a first amendment right such as freedom of speech is involved, a heavy burden is placed on the state to show not only substantial impedance to the officer but also that the communication in question falls into the traditionally unprotected areas of "fighting words" [15] or speech creating "a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest." [16]

This statutory construction answers the assertions on appeal that the statute is overbroad and void for vagueness. The statute is not overbroad because the statute as we now construe it can have no application to constitutionally protected speech or conduct. Moreover, the statute as construed does not suffer from vagueness. The statutory construction sufficiently defines the parameters of the prohibited conduct so that due process notice is provided and arbitrary enforcement is not a danger. The construction defines a "lawful order" and the limited circumstances in which one may be given. The construction delineates the specific duties in which peace officers may be engaged when giving a lawful order to disperse.

■ We therefore hold that the district court was in error in dismissing the complaint on the grounds that AS 11.45.-030(a)(2) is unconstitutional on its face. However, even under the facts of this case stated in a light most favorable to the state as set out at the beginning of this opinion, we must conclude that as a matter of law the evidence was insufficient to warrant a conviction under the statute as construed.

Affirmed.

ERWIN, Justice, with whom RABINOWITZ, C. J., joins (concurring).

In its majority opinion this Court has today decided that AS 11.45.030(a)(2) as amended may and should be so narrowly construed as to rescue it from a successful challenge to its constitutionality as drafted. The majority has nevertheless concluded that on the record before us the dismissal below must be affirmed for want of sufficient evidence for conviction. That the trial court's judgment should be affirmed I am in agreement. I am of the opinion, however, that the court has erred in its treatment of this statute.

In imposing the judicial "gloss" necessary to cure AS 11.45.030(a)(2) of constitutional infirmities, the majority has at least tacitly admitted that without these palliatives the statute is on its face unconstitutionally overbroad and vague. I heartily concur in this conclusion.

In Marks v. City of Anchorage, 500 P.2d 644 (Alaska 1972), we explained the doctrines of vagueness and overbreadth as follows:

> Although the overbreadth and voidfor-vagueness doctrines are related and, at least in the first amendment area, not wholly separable, they are functionally and doctrinally distinct. The overbreadth doctrine has evolved to give adequate breathing room to specific first

---

15. Chaplinsky v. New Hampshire, 315 U.S. 568, 572–73, 62 S.Ct. 766, 86 L.Ed. 1031, 1035–36 (1942).

16. Terminiello v. City of Chicago, 337 U.S. 1, 4, 69 S.Ct. 894, 896, 93 L.Ed. 1131, 1134 (1949).

amendment freedoms; a statute violates the doctrine when constitutionally-protected conduct as well as conduct which the state can legitimately regulate are included within the ambit of the statute's prohibition. By contrast, specific constitutional guarantees are not necessarily implicated when a statute is declared void for vagueness. The latter doctrine comes into play when the statutory language is so indefinite that the perimeters of the prohibited zone of conduct are unclear; a statute may be unconstitutionally vague even though no activities specifically protected by the Constitution are outlawed. A vague statute violates the due process clause both because it fails to give adequate notice to the ordinary citizen of what is prohibited and because its indefinite contours confer unbridled discretion on government officials and thereby raise the possibility of uneven and discriminatory enforcement.[1]

Applying these criteria it is clear that AS 11.45.030(a)(2) is unconstitutionally vague. Absent judicial concretization, the ordinary citizen desiring to comply with the law would be forced to speculate whether he had been presented with a "lawful order" to leave the area where an offense had occurred. Moreover, the very nature of the prohibited conduct—the failure to obey a police command—lends itself too readily to arbitrary and discretionary enforcement under the statute. In short, the provision fails to sufficiently define the circumstances under which a police order to disperse from the scene of a criminal occurrence is an appropriate exercise of police power.

To an equally onerous degree, the statute as enacted is constitutionally deficient because it is overbroad. Clearly, the provision places arbitrary power in the hands of police officers which could be used to prohibit conduct which is constitutionally protected. It enables the police, for example, to disperse persons exercising their rights of free speech and assembly at a political rally because some person on the fringe of the assembled crowd had there engaged in some unspecified criminal conduct having perhaps nothing to do with the rally itself or the others there assembled.

The state, appellant herein, has not questioned that serious constitutional shortcomings are apparent from the specific terms of the statute. The majority opinion reflects the same persuasion. Under, however, the imprimatur of Colten v. Kentucky, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972),[2] and in recognition of the duty set forth in Hoffman v. State, 404 P.2d 644, 646 (Alaska 1965), and Stock v. State, 526 P.2d 3 (Alaska 1974), to reasonably construe statutes to "avoid a danger of unconstitutionality," the court today has engaged in extensive repair work to remedy the deficiencies inherent in the language of the statute.

I question that AS 11.45.030(a)(2) as now construed by the majority completely satisfies these major constitutional objections. Moreover, while I do not dispute our duty to construe statutes constitutionally where reasonable, and while I recognize that in *Marks* we acknowledged that the offer of a saving construction might have enabled us to rescue the Anchorage ordinance from its deficiencies,[3] I note that such a remedial approach is not mandatory. Clearly we must temper our obligation to construe statutes constitutionally with a careful concern for the maintenance of a proper separation between the judicial and legislative functions.

Even if this statute is capable of remedial construction, which I seriously doubt, I

---

1. 500 P.2d at 646 (footnotes omitted).

2. The majority seems to have completely disregarded the extensive criticism of this case which is to be found in *Marks*, where we noted, for example, that

   .  .  .  *Colten* is a perplexing opinion, out of the mainstream of the United States Supreme Court precedents, most of which were not cited by the Court, and its effects on the vagueness and overbreadth doctrines must be considered extremely uncertain. 500 P.2d at 654.

3. 500 P.2d at 657.

am of the opinion that to do so is to engage in unwarranted and unreasonably extensive judicial legislation. The judicial gloss imposed by the majority is made up of almost whole cloth. It seems questionable, for example, that it is a wholly "reasonable," let alone necessary inference that in delimiting the operation of the statute to those instances "where a crime has occurred" the legislature actually intended to criminalize only those "wilfull" refusals to disperse which act to "substantially impede" an officer in the performance of his duties in "effecting an arrest, in investigating a crime, or in insuring the public safety."[4] I am unable to discern from the history or language of the provision a clear indication that the legislature ever had in mind any such specific limitations on this exercise of the police power.[5] It seems equally likely, in fact, that what was at least partly envisioned in this provision was the grant of a broadly discretionary power to "break up" assemblages when any sort of criminal activity can be identified in the vicinity.[6] As a result, not only do the terms "crime" and "lawful order" pose a significant vagueness problem, they also threaten that "adequate breathing room" assured to first amendment freedoms.[7]

The open-ended language employed in AS 11.45.030(a)(2) constitutes such an unfettered grant of discretionary police power as to require extensive judicial prosthesis to not only solidify its impermissibly vague contours, but to obviate its potential "chilling effect" upon the free exercise of first amendment freedoms.[8] Even were I convinced that it would satisfy constitutional objections, in the absence of more concrete legislative guidelines I would decline to judicially legislate this necessary limiting "gloss."

4. P. 322 *supra*.

5. It is significant, for example, that there are no guidelines as to what magnitude of "crime" is sufficient to trigger the statute; that there is no limitation on the size of the area around the criminal occurrence which may reasonably be cleared to avoid any "impedance;" that there is no indication of the proper scope of a "lawful" order.

6. It may be noted that specific statutes already exist in Alaska which regulate and proscribe certain types of conduct with which AS 11.45.030(a)(2) as construed by the majority seems to be concerned. *See* AS 11.45.-020 (riot and unlawful assembly) and AS 11.30.210 (obstructing an officer).

7. P. 322–323 & note 1 *supra*.

8. Note that in *Stock*, the most recent example of constitutional construction cited by the majority, we observed that we were not there dealing with "a possible restriction on the exercise of first amendment rights . . . [and no contention could be made that that statute had] a subterfugal purpose or effect of curtailing the exercise of protected political or individual rights to speech, association, privacy and the like." 526 P. 2d at 12 (footnote omitted).